**In re Timothy SMITH and Karrie A. Smith, Debtors.**

**American Express Bank, FSB; Robert D. Miller, Jr., Acting United States Trustee; David M. Howe, Chapter 13 Trustee, Appellants,**

**v.**

**Timothy Smith and Karrie A. Smith, Appellees.**

**BAP Nos. WW–08–1311–MoJuH, WW–08–1312–MoJuH, WW–08–1313–MoJuH.**
**Bankruptcy No. 07–43853–PBS.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Oct. 5, 2009.

360

William A. McNeal/Gilbert B. Weisman, Becket & Lee, Malvern, PA, for American Express Bank.

Marjorie S. Raleigh, Seattle WA, for U.S. Trustee.

Gerald R. Pederson, Vancouver, WA, for David M. Howe, trustee.

Stanley F. Horak, Vancouver, WA, for Timothy & Karrie Smith.

Before: MONTALI, JURY and HOLLOWELL, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge:

In this case we decide an issue that has come before many courts throughout the country, but not before this Panel or the United States Court of Appeals for the Ninth Circuit. It is a problem that has vexed the bankruptcy bench and bar since the law was changed in 2005: may a debtor "deduct" secured debt payments *not* being paid because the property has been surrendered? We part company with several of our colleagues and conclude that debtors may not take those deductions.[1] Our conclusion is reinforced by a persuasive and compelling statement from our own court of appeals just a few weeks ago: "Ironic it would be indeed to diminish payments to unsecured creditors in this context on the basis of a fictitious expense not incurred by a debtor." *Ransom v. MBNA Am. Bank (In re Ransom)*, 577 F.3d 1026, 1030 (9th Cir.2009).

The chapter 13 trustee, the United States Trustee and an unsecured creditor objected to confirmation of debtors' chapter 13[2] plan, arguing that debtors had failed to devote all of their "projected disposable income" to payment of unsecured creditors as required by section 1325(b) and that the plan was not proposed in good faith. In particular, in calculating their "projected disposable income," debtors deducted payments for collateral (two houses and a vehicle) which they were surrendering under their plan.

Holding that Congress removed the flexibility of courts to consider whether the expenses of above-median income debtors are "reasonably necessary" and that the fixed formula of the means test under section 707(b)(2) (as incorporated by section 1325(b)(3)) permitted debtors to deduct payments that they were contractually obligated to make as of the petition date even though they intended to surrender the collateral, the bankruptcy court overruled the objections. All three objecting parties appealed.

Subsections (b)(2) and (b)(3) of section 1325, read together, provide that if an expense is not reasonably necessary for a debtor's and/or dependants' maintenance and support, it is not included in the calculation of disposable income. If the expense is reasonably necessary, and the debtor is an above-median income debtor, subsection (b)(3) requires the court to determine the *amount* in accordance with section 707(b)(2). In other words, subsections 1325(b)(2) and (b)(3) require a two-part inquiry.

Because we believe that a bankruptcy court must consider whether debtors themselves treat expenses as "reasonably necessary" for their and their dependents' maintenance and support under section

---

1. In a separate opinion we are issuing concurrently with this one we reach a similar conclusion regarding attempted deductions from disposable income for payments not being made because the underlying property has been valued at zero, leaving any remaining claim no more than wholly unsecured. *Yarnall v. Martinez (In re Martinez)*, No. NV–08–1332, 2009 WL 3338405 (9th Cir. BAP Oct. 5, 2009).

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, as enacted and promulgated after the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 ("BAPCPA").

1325(b)(2) before determining the "amount" of that expense under subsection (b)(3), we REVERSE. Given this result, we do not need to decide whether the bankruptcy court erred in rejecting the good faith objections.

## I. FACTS

Timothy and Karrie Smith ("Debtors") filed a voluntary chapter 7 petition on November 14, 2007. Debtors also filed a Statement of Current Monthly Income and Means Test Calculation ("Form B 22A"). After the United States Trustee ("UST") moved to dismiss the case under section 707(b), and with Debtors' consent, the bankruptcy court entered an order converting the case to chapter 13. The conversion order states that for the reasons set forth in the court's oral ruling, "the circumstances of the debtors' financial situation demonstrates abuse, justifying dismissal or, with the debtors' consent, conversion to chapter 13[.]"

Debtors' post-conversion Schedule I reflected actual, projected monthly gross income of $10,417, less payroll deductions of $2,810, for a net monthly income of $7,607. Schedule I also reflects that Debtors support three children aged 15 and under. Debtors' post-conversion Schedule J reflected living expenses in the amount of $6,718. Debtors also filed their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B 22C"), which contained the same financial information as that disclosed in their Form B 22A, except that Form B 22C included a chapter 13 administrative expense of $89 a month.

In particular, both Form B 22A and Form B 22C showed a current monthly income of $12,906 (for annual income of $154,872), which all parties agree was in excess of the applicable state median income. Debtors deducted from this income monthly expenses of $14,655, resulting in a negative monthly disposable income of -$1,749.00. Debtors' expenses included $7,185 in monthly payments on two houses and a vehicle which they proposed to surrender pursuant to section 4 of their chapter 13 plan. Because the resulting disposable income was a negative figure, Debtors did not propose a five-year plan but instead proposed a six-month plan with plan payments of $889 a month, providing unsecured creditors a total of $4,300.60 for a yield of approximately four percent.

If the payments on the surrendered property were not deducted, Debtors could claim a statutorily allowed housing allowance of $1,245 [3] and would have a positive monthly disposable income of $4,191. In that event, Debtors could pay the scheduled unsecured debt [4] in full over 24 months (if all disposable income were applied to the plan each month) or in full over 60 months (if Debtors applied less than half of their disposable income to the plan each month).

American Express Bank, FSB ("Amex"), the UST and the chapter 13 trustee ("Trustee") [5] (collectively, "Appellants") objected to confirmation of Debtors' plan. They contended that if Debtors did not deduct payments for surrendered property

---

**3.** According to Debtors' opening brief, they are currently renting a house for $2,100 a month.

**4.** Debtors scheduled $101,256.00 in unsecured debt. This debt, however, does not include whatever deficiency remains following surrender of the two houses and the vehicle. Debtors' schedule of unsecured nonpri-

ority claims reflects five credit card debts and one medical bill.

**5.** Karla Forsythe was the chapter 13 trustee when the notice of appeal was filed; on February 24, 2009, we entered an order substituting successor trustee David M. Howe as appellant.

when calculating their monthly disposable income, Debtors would be able to pay a 100 percent dividend to all creditors.[6] Both the UST and Amex asserted that Debtors' plan was not proposed in good faith (thus violating section 1325(a)(3)) and that the deduction of expenses for surrendered collateral was contrary to Congress' intent in enacting BAPCPA. Trustee contended that section 1325(b)(2) requires a court to determine whether an expense is "reasonably necessary" and that section 1325(b)(3)'s incorporation of the means test calculation of section 707(b)(2) for determining the "amounts" of permissible expenses simply supplements section (b)(2) and does not replace or supersede it. The UST contended that section 707(b)(2)(A) does not permit the deduction of payments on debts secured by property surrendered or to be surrendered by Debtors.

On November 14, 2008, the bankruptcy court entered an order overruling Appellants' objections to confirmation and a memorandum decision setting forth its findings of fact and conclusions of law. *See In re Smith,* 401 B.R. 469 (Bankr. W.D.Wash.2008). Amex and the UST filed timely notices of appeal on November 24, 2008, commencing BAP Nos. 08–1311 and 1312, respectively. Trustee's predecessor filed a notice of appeal on November 25, 2008, commencing BAP No. 08–1313.[7]

No order confirming Debtors' plan has been entered, so the order on appeal is interlocutory. On February 26, 2009, we *sua sponte* entered an order granting Appellants leave to appeal the interlocutory order overruling the objections to confirmation of Debtors' chapter 13 plan.[8] We also allowed Debtors to file a joint brief for all three appeals.

The case was argued before us on May 19, 2009. On August 14, 2009, the Ninth Circuit issued its *Ransom* decision.

## II. ISSUE

In calculating their disposable income to be paid under their plans, may above-

---

**6.** In support of its objection, Amex attached three memorandum decisions issued by the bankruptcy court in August 2006, before the Ninth Circuit issued its decision in *Maney v. Kagenveama (In re Kagenveama),* 541 F.3d 868 (9th Cir.2008). In those decisions, the court held that the means test under section 707(b) is a historical gauge; even though a debtor may intend to surrender collateral, the underlying debt is "contractually due" on the petition date and could be included as an expense in the means test calculation. That said, the bankruptcy court held that the means test was just a "starting point in determining the amount of projected disposable income available to unsecured creditors." Reviewing the "projected disposable income" language of section 1325(b)(1), the bankruptcy court concluded that courts were required to employ a forward-looking analysis for both a debtor's income and for his or her expenses, and thus positive cash flow resulting from the surrender of collateral had to be allocated to the repayment of unsecured creditors.

Thereafter, the Ninth Circuit held in *Kagenveama* that "projected disposable income" is determined on a backward-looking basis. Instead, in calculating "projected disposable income," a court must use the "current monthly income" as defined in section 101(10A), which requires consideration of historical facts: the debtor's income based on an average of what he or she earned over the six months preceding the petition date. Postpetition adjustments to income are not relevant.

**7.** Trustee's appeal was timely under Rule 8002(a), which provides that if one party files a timely notice of appeal, "any other party" may file a notice of appeal within ten days of the first notice of appeal.

**8.** In light of the significance of the issue presented by these appeals, we are concurrently issuing a certification for appeal of this interlocutory order to the Ninth Circuit, as we did recently in two other cases of first impression. *Ransom v. MBNA Am. Bank (In re Ransom),* 380 B.R. 809 (9th Cir. BAP 2007); *Int'l Assn. of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo),* 408 B.R. 280, n. 3 (9th Cir. BAP 2009).

median income chapter 13 debtors deduct payments for collateral they are surrendering?

## III. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(2)(L) and § 1334. We have jurisdiction under 28 U.S.C. § 158(a)(3), as we have granted leave to Appellants to appeal the interlocutory order overruling their objections to Debtors' chapter 13 plan.

## IV. STANDARD OF REVIEW

■ The issue presented in these appeals is purely one of law and statutory construction; no factual dispute exists. "We review issues of statutory construction and conclusions of law, including interpretation of provisions of the Bankruptcy Code, de novo." *Mendez v. Salven (In re Mendez)*, 367 B.R. 109, 113 (9th Cir. BAP 2007) (citing *Einstein/Noah Bagel Corp. v. Smith (In re BCE W., L.P.)*, 319 F.3d 1166, 1170 (9th Cir.2003)).

## V. DISCUSSION

### A. *Overview*

Section 1325(b)(1)(B) provides that if a trustee or unsecured creditor objects to confirmation of a chapter 13 plan, the court may not approve the plan unless, as of its effective date, the plan "provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B).

In *Kagenveama*, the Ninth Circuit held a debtor's "projected disposable income" for the purposes of section 1325(b)(1)(B) is the debtor's "disposable income" as defined in subsection (b)(2) "projected out over the 'applicable commitment period.'" *Kagenveama*, 541 F.3d at 872. The Ninth Circuit specifically rejected the chapter 13 trustee's argument that section 1325(b)(1)(B) requires a forward-looking determination of "projected disposable income." [9] *Id.* at 873–74. The Ninth Circuit

---

**9.** Since *Kagenveama's* issuance, four other courts of appeal have rejected its reasoning and holding. In particular, the Seventh Circuit held in *In re Turner*, 574 F.3d 349 (7th Cir.2009), that a chapter 13 above-median income debtor could not deduct as an expense his mortgage payments on property that he intended to surrender. In reaching its holding, the Seventh Circuit refused to apply a mechanical calculation that considers expenses that exist on the petition date, noting that such a mechanical test is appropriate for determining eligibility to proceed under particular chapters.

> Since the object of a Chapter 13 bankruptcy is to balance the need of the debtor to cover his living expenses against the interest of the unsecured creditors in recovering as much of what the debtor owes them as possible, we cannot see the merit in throwing out undisputed information, bearing on how much the debtor can afford to pay, that comes to light between the sub-

mission and approval of a plan of reorganization. Sometimes as in this case the creditors will benefit from the new information. But in other cases it will be the debtor.... The use of the later date, which is consistent with the statutory language though not compelled by it, is more sensible.

*Id.* at 355. *See also Nowlin v. Peake (In re Nowlin)*, 576 F.3d 258 (5th Cir.2009) (holding that "projected" disposable income permits consideration of "reasonably certain" future events and stating that the Ninth Circuit emphasized the modified definition of "disposable income" without recognizing the independent significance of the word "projected"); *Hamilton v. Lanning (In re Lanning)*, 545 F.3d 1269 (10th Cir.2008), *petn. for cert. filed*, 77 U.S.L.W. 3449 (Feb. 3, 2009) (Supreme Court has requested briefing by the Solicitor General on the petition (— U.S. —, 129 S.Ct. 2820, 174 L.Ed.2d 288)) (holding that the starting point for calculating a chapter 13 debtor's projected disposable income is presumed to be debtor's current monthly income,

also rejected the argument that the "disposable income" calculation of section 1325(b)(2) was a presumptive starting point which could be supplemented by evidence of future or actual "finances of the debtor." *Id.* at 874, overruling *Pak v. eCast Settlement Corp. (In re Pak)*, 378 B.R. 257, 267 (9th Cir. BAP 2007).

Section 1325(b)(2) defines "disposable income" as the debtor's current monthly income less the amounts reasonably necessary to be expended for, *inter alia*, the support of the debtor and his or her dependents. 11 U.S.C. § 1325(b)(2).[10] Section 1325(b)(3), however, restricts the ability of a bankruptcy court to determine the "amounts reasonably necessary to be expended" when the debtor has an above-median income.[11] For a debtor with above-median income, "amounts reasonably necessary to be expended under paragraph (2) . . . shall be" calculated in accordance with section 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3). Section 707(b)(2) is the chapter 7 "means test" provision, and subsection (b)(2)(A)(iii) provides that the debtor's average monthly payments on account of secured debts shall be calculated as the sum (then divided by 60) of

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or

---

10. subject to showing of substantial change in circumstances); *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652, 659 (8th Cir. 2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 1630, 173 L.Ed.2d 997 (2009) (holding that the means test is only a starting point for determining a chapter 13 debtor's disposable income). "[T]he final calculation can take into consideration changes that have occurred in the debtor's financial circumstances as well as the debtor's actual income and expenses as reported on Schedules I and J." *Frederickson,* 545 F.3d at 659.

10. Section 1325(b)(2) provides:

(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended-
    (A) (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
    (ii) for charitable contributions (that meet the definition of "charitable contri-

bution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4))) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11. Section 1325(b)(3) provides:

(3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—
    (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
    (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
    (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals,

other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts[.]

11 U.S.C. § 707(b)(2)(A)(iii).

## B. The Bankruptcy Court's Decision

In a thorough and reasoned decision, the bankruptcy court analyzed whether, in light of *Kagenveama*, section 1325(b) and section 707(b) permit an above-median income chapter 13 debtor, when calculating disposable income to be paid under a plan, to deduct payments on secured debt even though the debtor does not intend to make such payments in the future. The bankruptcy court held that section 1325(b)(3) supersedes—not supplements—subsection (b)(2) when debtors have above-median incomes:

> As with "disposable income," the term "amounts reasonably necessary to be expended" appears only twice in § 1325; once in § 1325(b)(2) and then in § 1325(b)(3). If the Court were to require an additional requirement that the expense also be necessary for a debtor's "maintenance or support," it would likewise render as surplusage the clear direction in § 1325(b)(3) as to how "amounts reasonably necessary to be expended" *shall* be determined.

*Smith*, 401 B.R. at 474.

■ There is certainly a temptation to affirm the bankruptcy court's thoughtful decision. The court interprets *Kagenveama* as requiring symmetry such that if we look backward to calculate income, we should not look forward to measure expenses.[12] The court equates doing otherwise with using two sets of books to account for a company's finances.[13] But we ultimately disagree with this reasoning because good accounting practices have nothing to do with the doctrine of *stare decisis* or with the familiar rules of statutory construction.

## C. The Dicta of Kagenveama

It goes without saying that we must follow binding precedent in our circuit, as the bankruptcy court felt it must. We do not read *Kagenveama* as binding precedent with respect to the calculation of expenses under sections 1325(b)(2) and (b)(3). Consequently, we are bound only by the Supreme Court's directive to follow the plain meaning of the words of a statute unless they lead to an absurd result.[14]

The issue before the Ninth Circuit in *Kagenveama* did not involve either the determination of what are proper expenses (under section 1325(b)(2)) or the measurement of them (under section (b)(3)). Its only meaningful allusion to expenses to be deducted from income is a passing reference to those two subsections, without any analysis:

plus $575 per month for each individual in excess of 4.

12. *See Smith*, 401 B.R. at 474 ("After *Kagenveama*, it would also be inconsistent to apply a backward-looking approach to income, yet adopt a forward-looking approach in determining expenses[.]'").

13. *Id.* (applying a backward-looking approach to income but a forward-looking approach to expenses "would be similar to having a business employ two different accounting systems").

14. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (plain meaning of legislation should be conclusive, except in rare cases in which literal application of statute will produce result demonstrably at odds with intention of its drafters; in such cases, intention of drafters, rather than strict language, controls); *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (when statute's language is plain, sole function of courts, at least where the disposition required by statute's text is not absurd, is to enforce statute according to its terms).

The revised "disposable income" test *uses a formula to determine what expenses are reasonably necessary. See* 11 U.S.C. § 1325(b)(2)-(3). This approach represents a deliberate departure from the old "disposable income" calculation, which was bound up with the facts and circumstances of the debtor's financial affairs. *In re Winokur,* 364 B.R. 204, 206 (Bankr.E.D.Va.2007); *In re Farrar–Johnson,* 353 B.R. 224, 231 (Bankr.N.D.Ill.2006) (stating that "[e]liminating flexibility was the point: the obligations of [C]hapter 13 debtors would be subject to clear, defined standards, no longer left to the whim of a judicial proceeding") (internal quotations omitted).

*Kagenveama,* 541 F.3d at 874 (emphasis added).[15]

If those brief statements even rise to the level of dicta, they are still not binding on us because there is absolutely no analysis of whether sections 1325(b)(2) and (b)(3) operate as one, albeit redundantly, or in sequence, with (b)(3) operative only if

(b)(2) triggers it. More specifically, there is no analysis or discussion *whether* or *how* the subsections operate to determine deductible expenses.[16]

It is true that figuring out "projected disposable income" necessarily involves consideration of proper expenses to subtract from "current monthly income". But the court in *Kagenveama* was struggling with the competing views about how to define "projected" with respect to the "income" half of the equation and was not addressing whether the deducted expenses were necessary for the debtor's support.[17]

Thus, while *Kagenveama* directs us to "look backward" to define the income to be projected throughout the applicable commitment period, it did not address the definition of expenses or the measurement of them. Simply put, the opinion does not direct how courts are to calculate the "disposable" portion of "projected disposable income" (income minus expenses × temporal period of three or five years = amount to be paid to unsecured creditors). For this reason the opinion does not bind us to

---

**15.** Elsewhere in the opinion, in two footnotes, the subsections are cited:

> Disposable income is defined as "current monthly income received by the debtor ... less amounts reasonably necessary to be expended[.]" 11 U.S.C. § 1325(b)(2).... Section 1325(b)(3) requires that if a debtor's annualized current monthly income is greater than the median family income of similarly-sized households, then "amounts reasonably necessary to be expended" are determined in accordance with § 707(b)(2).

*Kagenveama,* 541 F.3d at 872 n. 1.

> BAPCPA replaced the old definition of what was "reasonably necessary" with a formulaic approach for above-median debtors. 11 U.S.C. § 1325(b)(3). This formula significantly changed the way in which "disposable income" is calculated.

*Id.* at 873 n. 2.

**16.** *V.S. ex rel. A.O. v. Los Gatos–Saratoga Joint Union High School Dist.,* 484 F.3d 1230, 1232

n. 1 (9th Cir.2007) ("we are not bound by a holding 'made casually and without analysis, ... uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the panel's full attention ...' "), quoting *United States v. Johnson,* 256 F.3d 895, 915 (9th Cir.2001); *see also Pakootas v. Teck Cominco Metals, Ltd.,* 452 F.3d 1066, 1082 (9th Cir.2006) (quoting *Johnson,* holding that statements made without a deliberate consideration of the issues presented are not binding and may be re-visited).

**17.** In holding that "projected disposable income" is the same as "disposable income," the Ninth Circuit relied on *Anderson v. Satterlee (In re Anderson),* 21 F.3d 355, 357 (9th Cir.1994) (pre-BAPCPA case, determining the debtor's "disposable income" and then projecting that sum into the future for the required duration of the plan). This is how the court defined the term "projected" within the phrase "projected disposable income."

a rule of how to determine the expenses that must be applied to the income side of the equation, nor does it compel us to impose a symmetry that neglects the reality of the case before us, *viz.*, that Debtors decided that they did not need their extra vehicle or their two houses. We violate nothing by applying an interpretation of the statutory scheme that teaches that if an item is not necessary for a debtor's support or maintenance, a debtor cannot engage in the fiction of pretending to pay for it.

We apply the words of the statute even though doing so leaves us with a backward looking definition of projected disposable income (because of *Kagenveama*) and a definition of expenses which (because of the plain wording of the statute) takes into account financial realities occurring post-petition and incorporated into a debtor's chapter 13 plan.[18] Without citing *Kagenveama* anywhere in its opinion, the *Ransom* court quoted our Panel's thinking on this very point:

> However, in making that calculation [what debtors can afford to pay their creditors], what is important is the payments that debtors *actually make*, not how many cars they own, because the *payments that debtors make* are what actually affect their ability to make payments to their creditors.

*Ransom,* 577 F.3d at 1030 (emphasis added).

D. *Two–Part Analysis of Sections 1325(b)(2) and (b)(3)*

■ Under the statute, a debtor may deduct from income those expenses reasonably necessary "for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2)(A)(i).[19] Thus, we read sections 1325(b)(2) and (b)(3) in sequence, as follows: if an expense is not reasonably necessary for the debtor's and/or dependants' maintenance and support, the inquiry ends at section 1325(b)(2) as there is no "amount" to determine in section 707(b)(2) via section 1325(b)(3). Stated otherwise, there is no corresponding amount to subtract from the income component to get to what is "disposable" for the above-median income debtor.

If the expense is reasonably necessary for the debtor's and/or dependants' maintenance and support, then section 1325(b)(3) requires the court to determine the *amount* in accordance with section 707(b)(2).[20] In other words, sections 1325(b)(2) and (b)(3) require a two-step inquiry.

■ Turning to the facts before us, the debtors found their two houses and one vehicle so *unnecessary* to their maintenance and support they surrendered them

**18.** While this may be labeled a "forward-looking" approach to expenses, it is actually consideration of "a fixed debt that we know will disappear before the Chapter 13 plan is approved." *Turner,* 574 F.3d at 356. As Judge Posner stated in *Turner*:

> [B]ankruptcy judges must not engage in speculation about the future income or expenses of the Chapter 13 debtor. That would unsettle and delay the Chapter 13 process as well as exaggerate how accurately a person's economic situation in five years can be predicted. But in this case there is no speculation; all that is at issue is

a fixed debt that we know will disappear before the Chapter 13 plan is approved. *Id.*

**19.** Section 1325(b)(2)(B) adds a deduction from current monthly income for necessary expenses for a debtor engaged in business.

**20.** This is because section 1325(b)(2) begins "For purposes of this subsection, the term 'disposable income' means...." Then subsection (b)(3) begins "Amounts reasonably necessary to be expended under paragraph (2) shall be determined...."

to the lenders. They made that decision, not the court. Thus they had no payments to make. As in *Ransom* in a situation having precisely the same economic effect (no lien at all there; no secured debt to pay here), the court's words are instructive:

> As did our BAP, we decide this issue not on the IRS's manual, but instead on the statutory language, plainly read, which we believe does not allow a debtor to deduct an "ownership cost" (as distinct from an "operating cost") that the debtor does not have. An "ownership cost" is not an "expense"—either actual or applicable—if it does not exist, period.

577 F.3d at 1030 (citation and internal quotation marks omitted).

The bankruptcy court believed that *Kagenveama* requires a bankruptcy court to apply a "snapshot" petition-date analysis in calculating both prongs of disposable income: expenses and income. In other words, the bankruptcy court felt it could not consider post-petition events in determining whether expenses are reasonably necessary for the maintenance and support of debtors and their dependants. We disagree because, as noted, the clear language of section 1325(b)(2) requires the expenses to be reasonably necessary for the support and maintenance. In *In re Martinez*, we are holding that payments for collateral that has been stripped of its value are not necessary for support and maintenance.

So too, here. Items that a debtor has surrendered or intends to surrender are not necessary for his or her support or maintenance. The concepts—surrender and necessity—are mutually exclusive of one another. Phantom payments for the surrendered item are not reasonably necessary for a debtor's support and maintenance.

Section 1325(b)(2) therefore requires the court to look at the necessity of the expense as determined by the debtor on a real-time, forward-looking basis, while section 1325(b)(3)—which incorporates section 707(b)-requires a static, backwards-looking inquiry, since 707(b) itself requires such an analysis. *See, e.g., Morse v. Rudler (In re Rudler)*, 576 F.3d 37 (1st Cir. 2009). Here, section 1325(b)(3) does not come into play, so we are not bound by a backwards-looking inquiry.

This interpretation is consistent with the plain language of the statute. The Ninth Circuit in *Kagenveama* acknowledged that when a statute's language is plain, the court should enforce it according to its terms. *Kagenveama*, 541 F.3d at 872. To the extent that sections 1325(b)(2) and (b)(3) are ambiguous, this interpretation avoids an absurd result and is consistent with the intent of the statute's drafters.

Purely historical expenses which will never be paid under or outside of the plan (phantom expenses) cannot be reasonably necessary for a debtor's support or maintenance. To include them in the calculation of disposable income ignores the different functions of sections 1325(b)(2) and (b)(3). Subsection (b)(2) is keyed to what the debtor determines to be necessary; once that is done, as here, subsection (b)(3) governs the amounts of these expenses, not the determination of whether such expenses are necessary in the first place.

To prove the point that sections 1325(b)(2) and (b)(3) are not conjoined, but perform different functions and must be considered in sequence, consider the situation (admittedly not the case before us)[21]

---

**21.** The dissent refers to our "reliance" on this

hypothetical. That is not the case. As noted

of an above-median income debtor engaged in business.[22]  If section 1325(b)(3) governed *what* expenses are deductible, as opposed to the *amount* of those expenses, chapter 13 debtors engaged in business could not deduct business expenses as those expenses are not specifically found in section 707(b)(2) (and thus not incorporated by section 1325(b)(3)), even though section 1325(b)(2)(B) otherwise permits the deduction of business expenses.  Thus we are sent to discover the allowable expenses from the Internal Revenue Service.[23]

Relying on the Internal Revenue Service's handbook does not provide the answer after all, because it offers no specific dollar amounts for business expenses.  We necessarily circle back to what the debtor claims as necessary expenditures, subject to any party-in-interest challenging the reasonableness of them.  Even the debtor in *Wiegand* claimed specific amounts as proper; the quarrel there was not *whether* they were proper deductions, but *when* they should be subtracted.

Under our two-prong analysis of sections 1325(b)(2) and (b)(3), a court can permit an above-median income debtor to deduct necessary business expenses per-

mitted by section 1325(b)(2) when calculating disposable income.  If, however, section 1325(b)(3) and section 707(b)(2) govern the determination of whether such expenses are necessary (as opposed to governing the amount of the expenses), section 1325(b)(2)(B) is rendered meaningless because there are no business expenses to deduct.

The foregoing illustrates the error of assuming that mechanical determinations of section 707(b)(2)(A) & (B) must be applied for above-median income debtors regardless of their *actual* reasonably necessary expenses, whether for personal or business purposes.

In the case before us, Debtors cannot have it both ways.  Once they determine that certain assets secured by liens are not necessary, and they surrender those assets, the corresponding debts disappear from section 1325(b)(2) and there is no need to resort to section 1325(b)(3) and its dispatch to the mechanical formulas of section 707(b)(2)(A) & (B).  The dissent suggests that we have restored to the bankruptcy court the pre-BAPCPA discretion to decide what are reasonable expenses.

in the text, we simply look to an analogous situation under the statute to bolster our view of the issue before us.

**22.**  Disposable income is current monthly income less amounts reasonably necessary to be expended "if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business."  11 U.S.C. § 1325(b)(2)(B).  *See Drummond v. Wiegand (In re Wiegand)*, 386 B.R. 238 (9th Cir. BAP 2008).

**23.**  In *Wiegand*, we held that a chapter 13 debtor engaged in business may not deduct business expenses for the purposes of calculating current monthly income, but that such expenses are to be deducted from the current monthly income when calculating "disposable income."  In so holding, we noted that Form B 22C—which is the form for calculating sec-

tion 707(b)'s means test—is "directly at odds with" section 1325(b)(2)(B).  *Id.* at 241 and 243.  *Kagenveama* does not address the conflicts between section 1325(b)(2)(B) and Form B 22C.

We suggested that above-median debtors should refer to the Internal Revenue Standards for "Other Necessary Expenses" as specified in the Internal revenue Service Financial Analysis Handbook.  *Wiegand*, 386 B.R. at 243 n. 11. That resource lists as likely business expense items "Unsecured debts", with an example given as "[p]ayments required for the production of income such as payments to suppliers and payments on lines of credit needed for business...." Int. Rev. Man.  Financial  Analysis  Handbook, § 5.15.1.10 (available at http://www.irs.gov/irm/).

Not so—the debtors made the decision about what assets they retained and what assets they surrendered. Under our analysis the role of the bankruptcy court is simply to hold them to the consequences of their decision.

For the foregoing reasons we disagree with the decision of the bankruptcy court.

## VI. CONCLUSION

For the foregoing reasons, we REVERSE.

HOLLOWELL, J., dissenting.

Under the guise of a plain meaning statutory analysis, the majority holds that § 1325(b)(2) and (b)(3) must be read sequentially, thereby arriving at a "common sense" result which only permits an above median-income debtor to use the means test to calculate expenses *after* the debtor demonstrates the expense is reasonably necessary. While I sympathize with the majority's desire to achieve a common sense result, I cannot agree with its contorted statutory analysis.

Section 1325(b)(3) provides that when a debtor has an above-median income, the reasonably necessary expenses to be deducted from current monthly income ("CMI") *"shall be"* calculated in accordance with § 707(b)(2)(A) and (B), otherwise known as the means test. 11 U.S.C. § 1325(b)(3) (emphasis added). The word "shall" is mandatory. Therefore, for the above-median income debtor, expenses must be calculated under § 707(b)(2). *In re Farrar–Johnson,* 353 B.R. 224 (Bankr. N.D.Ill.2006).

Presumably, Congress believed the inclusion of the means test into the calculation of an above median-income debtor's CMI was the mechanism through which debtors would meet BAPCPA's goals of ensuring debtors repay creditors the maximum they can afford and reducing judicial discretion and non-uniformity. *See* Marianne B. Culhane & Michaela M. White, *Catching Can–Pay Debtors: Is the Means Test the Only Way,* 13 Am. Bankr.Inst. L.Rev. 665, 677–683 (2005); *Maney v. Kagenveama (In re Kagenveama),* 541 F.3d 868, 875 (9th Cir.2008); *In re Alexander,* 344 B.R. 742, 747–48 (Bankr.E.D.N.C. 2006) (Congress acted intentionally when it inserted the means test into the calculation of chapter 13 payment plans).

The Ninth Circuit, in *Kagenveama,* declined to "override the definition and process for calculating disposable income under § 1325(b)(2)-(3) as being absurd" even if it produced a less favorable result for unsecured creditors. 541 F.3d 868, 875 (9th Cir.2008). In contrast, the Ninth Circuit recently determined, in *Ransom v. MBNA Am. Bank (In re Ransom),* 577 F.3d 1026 (9th Cir.2009) that in order to reach a result consistent with BAPCPA's goal of ensuring that debtors repay creditors as much as possible, § 707(b)(2)(A)(ii)(I) could only be interpreted to "apply" expense standards in cases where debtors in fact pay such expenses.

Of course, as the majority notes, the somewhat inconsistent holdings of *Kagenveama* and *Ransom* are not binding as to the resolution of this case since they did not address the issue presented here on appeal. However, I part with the majority's contention that the *Kagenveama* court's statutory analysis and discussion about how projected disposable income should be calculated was "made casually and without analysis," and can be dismissed as mere dicta. Instead, I believe the statutory analysis undertaken by the Ninth Circuit in *Kagenveama* provides important guidance for the interpretation of § 1325(b)(2) and (b)(3).

In *Kagenveama,* the Ninth Circuit was confronted, as we are here, with interpreting a subsection of § 1325(b) that contains an imbedded definition in a following subsection. It did not read the sections sequentially. Rather, the court held that the definition of "disposable income" in § 1325(b)(2) gave meaning to the phrase "projected disposable income" in § 1325(b)(1)(B). 541 F.3d at 873. The *Kagenveama* court refused to "de-couple 'disposable income' from the 'projected disposable income' calculation simply to arrive at a more favorable result for unsecured creditors, especially when the plain text and precedent dictate[d] the linkage of the two terms." *Id.* at 875.

I agree with the courts that find the most natural reading of § 1325(b)(3) "commands the application of Section 707(b)(2)(A) and (B) to determine the meaning of the amounts 'reasonably necessary to be expended' " under § 1325(b)(2). *In re Burbank,* 401 B.R. 67, 73 (Bankr. D.R.I.2009) *(citing In re Quigley,* 391 B.R. 294, 299 (Bankr.N.D.W.Va.2008)). Because § 1325(b)(3) contains the definition of "amounts reasonably necessary to be expended," it must be read to give meaning to what is to be deducted by an above median-income debtor in order to determine disposable income. The bankruptcy court correctly analyzed § 1325(b)(2) and (b)(3):

> As with "disposable income," the term "amounts reasonably necessary to be expended" appears only twice in § 1325; once in § 1325(b)(2) and then in § 1325(b)(3). If the Court were to require an additional requirement that the expense also be necessary for a debtor's "maintenance or support," it would likewise render as surplusage the clear direction in § 1325(b)(3) as to how

"amounts reasonably necessary to be expended" *shall* be determined.

*In re Smith,* 401 B.R. 469, 474 (Bankr. W.D.Wash.2008).

As another court noted, " § 1325(b)(3) states that the amounts determined to be reasonably necessary under § 1325(b)(2) *shall* be determined *in accordance with* § 707(b)(2)(A) and (B)—period. The term 'reasonably necessary' in § 1325(b)(3) is not superfluous—it is the very term that this section defines. For that reason, ... courts may [not] conduct a separate 'reasonably necessary' analysis beyond § 707(b)(2):" *In re Van Bodegom Smith,* 383 B.R. 441, 448 (Bankr.E.D.Wis.2008) (ultimately holding that payments on surrendered collateral are not "scheduled as contractually due" under § 707(b)(2)(A)(iii)(I) and, therefore, cannot be deducted in a debtor's means test calculation).

I do not agree that § 1325(b)(2) and (b)(3) should be read sequentially and am unswayed by the majority's reliance on a hypothetical situation of an above-median income debtor engaged in business to support its contention that this is the correct way to read the statute. Section 707(b)(2)(A)(ii) provides that a "debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the [IRS]...." 11 U.S.C. § 707(b)(2)(A)(ii)(I).

Business expenses are considered Other Necessary Expenses as specified in the IRS Financial Analysis Handbook. *Drummond v. Wiegand (In re Wiegand),* 386 B.R. 238, 243 n. 11 (9th Cir. BAP 2008); *In re Arnold,* 376 B.R. 652, 654–55 (Bankr.M.D.Tenn.2007). The IRS Finan-

cial Analysis Handbook provides for expenses that are necessary for production of income: "[i]f the taxpayer substantiates and justifies the expense, the minimum payment may be allowed. The necessary expense test of health and welfare and/or production of income must be met. . . ." Int. Rev. Man. Fin. Analysis Handbook, § 5.15.1.10 (available at http://www.irs.gov/irm/). Therefore, an above-median income debtor engaged in business may deduct his or her actual Other Necessary Expenses (via § 1325(b)(3)'s reference to § 707(b)(2)(A)) as long as those expenses are substantiated and necessary. As a result, business expenses do not require a separate determination of necessity in § 1325(b)(2) as the majority asserts. Section 1325(b)(2)(B) is not rendered meaningless but continues to apply to below-median income debtors who have business expenses.

The statutory analysis put forth by the majority, which reads § 1325(b)(2) and (3) sequentially, essentially adds language to § 1325(b)(3) to read *"after it is determined the expense is reasonably necessary, then* the amounts reasonably necessary to be expended shall be determined in accordance with § 707(b)(2)." Such a strained analysis also reads out the "reasonably necessary" language in calculations under § 707(b)(2)(A) for Other Necessary Expenses.

I cannot join my colleagues in an interpretation that upends the statutory inclusion of the means test in chapter 13, reverting back to the pre-BAPCPA judicial discretion as to what expenses of a debtor are reasonably necessary. *See Kagenveama,* 541 F.3d at 874 (deliberate departure from the pre-BAPCPA disposable income calculation was so that debtors would "be subject to clear, defined standards, no longer left to the whim of a judicial proceeding" (citation omitted)). The majority contends the discretion of the bankruptcy court, under its analysis, is only to hold debtors to the consequences of their decisions about what assets they retain or surrender; however, the reality of the majority's interpretation of the statute is that bankruptcy courts will have the discretion to make determinations about what expenses are "reasonably necessary."

While I sympathize with the majority's desire for a commonsense solution to the problem created by incorporating the means test into the chapter 13 above median-income debtor's calculation of disposable income, I do not believe it is the role of the judiciary to remedy outcomes that do not comport with our view of common sense. *See Id.* at 875 ("If the changes imposed by BAPCPA arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the statute.").