**IN RE: Raymundo GAMBOA, Patricia Mahoney Gamboa, Debtors.**

**Bankruptcy Case No. 12–03968–CL13**

United States Bankruptcy Court, S.D. California.

Signed February 15, 2013

Michael A. Feldman, The Feldman Law Group, San Diego, CA, for Debtor.

## MEMORANDUM DECISION AND ORDER ON CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN AND MOTION TO DISMISS

CHRISTOPHER B. LATHAM, JUDGE, United States Bankruptcy Court

Chapter 13 Trustee David L. Skelton has objected to confirmation of Debtors Raymundo and Patricia Gamboa's Chapter 13 plan and moved to dismiss their case. The central issue is whether Debtors may retain an income-producing property and cure the mortgage arrears on it through their plan. The court finds that they may not, and so **sustains** the Trustee's objection but **denies** his motion to dismiss.

### I

Debtors' plan provides for four initial payments of $1,342.29 and then $975.29 per month for the remaining 56 months. [ECF No. 60, p. 1 ¶ 1]. This yields a 1.01 percent dividend to general unsecured claims or a pro rata share of $2,075.65. [ECF No. 60, p. 3 ¶ 13]. Debtors propose to retain an income-producing property located at 9092 Libra Drive, San Diego, California (the "Libra property").[1] The Libra property is a single-family residence built in 1958. Debtors have no equity in the property, which is encumbered by a

1. Debtors' schedules are inconsistent with their opposition to the Trustee's objection. The opposition states that the Libra property is the rental property, while their amended Schedules list the Libra property as their primary residence. Debtors' other property is located at 4830 Doliva Drive, San Diego. For purposes of this order, the term "Libra property" refers to Debtors' rental property.

mortgage with $49,811.15 in arrears. They propose to pay all of the arrears through their plan.

Debtors initially asserted that the monthly mortgage payment was $2,227.00 and that they received $2,100.00 rent per month. In their supplemental brief, they state that the mortgage payment on the rental property is actually $2,197.13, instead of $2,227.00. Debtors assert that they have negotiated a monthly rent increase from $2,100.00 to $2,250.00, creating a monthly positive cash flow of $52.87 by the property.

## II

### A

Debtors argue that the Libra property has a positive cash flow because they raised the rent and their lender reduced the monthly mortgage payment. But Debtors disregard the Trustee's central argument that retaining the rental property results in a net loss because they are paying both arrears on this mortgage through the plan as well as the mortgage outside the plan. The difference between the rent received ($2,250.00) and the sum of the monthly mortgage payment ($2,197.13) together with the arrears ($873.88 per month) leaves an $821.01 monthly deficiency—without accounting for maintenance costs or potential vacancies. Thus, Debtors would maintain ownership of the Libra property throughout the plan's life at a significant loss.

Apart from omitting the mortgage arrears, Debtors' cash flow computation also overlooks likely future costs associated with maintaining the property. The court accepts Debtors' offer of proof that they have successfully negotiated a rent increase and reduced the principal, interest, taxes or insurance paid each month on the property. Yet despite these adjustments,

Debtors will almost certainly experience lost rent during vacancies, future increases in taxes and insurance premiums, as well as costs for maintenance of the property—which was built in 1958. Further, Debtors' variable interest rate on their mortgage could well rise, given that current rates are near historic lows. Any one of these additional costs would easily absorb the rental's minimal revenue surplus. The court therefore finds that the property operates at a net loss.

### B

Although Debtors focus on feasibility, the Trustee primarily objects to Debtors' retaining the Libra property on the theory that they are not applying all projected disposable income to the plan. [ECF No. 72, pp. 1–2]. A less than 100–percent plan is not confirmable unless a debtor applies all projected disposable income to it. 11 U.S.C. § 1325(b). Disposable income "means current monthly income received by the debtor ... less amounts reasonably necessary to be expended [ ] for the maintenance or support of the debtor ..." *In re Flores*, 692 F.3d 1021, 1025 (9th Cir.2012); 11 U.S.C. §§ 1325(b)(2) and (3). Thus, a debtor has not applied all projected disposable income to the plan if he proposes a less than 100–percent plan and wishes to retain an unnecessary expense.

Section 1325 provides that "amounts reasonably necessary to be expended ... shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." 11 U.S.C. § 1325(b)(3). The statute envisions a "two-step inquiry." *Am. Express Bank, FSB v. Smith (In re Smith)*, 418 B.R. 359, 368 (9th Cir. BAP 2009). First, "if an expense is not reasonably necessary for the debtor's and/or dependents' maintenance and support, the inquiry ends at section 1325(b)(2) as there

is no "amount" to determine." *Id.* But "[i]f the expense is reasonably necessary for the debtor's and/or dependents' maintenance and support, then section 1325(b)(3) requires the court to determine the amount in accordance with section 707(b)(2)." *Id.*

Ordinarily, a debtor who is current on a secured obligation may continue to make contractually scheduled payments and deduct them from current monthly income "regardless of whether the collateral is necessary." *Drummond v. Welsh (In re Welsh)*, 465 B.R. 843, 850 (9th Cir. BAP 2012); *see also* 11 U.S.C. § 707(b)(2)(A)(iii)(I). That same rule does not apply, however, to curing arrears on secured claims. *See In re Welsh*, 465 B.R. at 849–50; *see also* 11 U.S.C. § 707(b)(2)(A)(iii)(II); 6 Collier on Bankruptcy ¶ 707.04[3][c], at p. 707–38 (Alan N. Resnick & Heny J. Sommer eds., 16th ed. 2012) ("[T]he provision makes a distinction between amounts scheduled as contractually due on all secured debts and 'additional payments,' such as arrears, on necessary property ...."). Rather, Section 707(b)(2)(A)(iii)(II) limits "allowable cure payments to cure payments on necessary property." *See In re Welsh*, 465 B.R. at 850. Debtors propose to pay both contractual payments and arrearages on the Libra property mortgage. The court must therefore determine whether maintaining the Libra Property is a reasonably necessary expense.

### C

The Trustee draws an analogy between Debtors' effort to retain this property and a debtor proposing to fund a retirement account during a Chapter 13 plan. Courts generally hold that voluntary contributions to a pension fund or 401(k) account are not reasonably necessary expenses. *In re Merrill*, 255 B.R. 320, 324 (Bankr.D.Or.

2000); *see also In re Estes*, 254 B.R. 261, 264 (Bankr.D.Idaho 2000) (holding that repayment of a loan from a 401(k) retirement fund constitutes a per se unreasonable expense; *but see In re Mills*, 246 B.R. 395, 402 (Bankr.S.D.Cal.2000) (adopting a case-by-case approach and concluding that a modest contribution to a 401(k) plan was not per se unreasonable). The problem with such an investment is that while it may "enhance an individual's financial security," it does so impermissibly at the "expense of unpaid creditors." *In re Merrill*, 255 B.R. at 324 (quoting *In re Festner*, 54 B.R. 532, 533 (Bankr.E.D.N.C. 1985)).

The reasoning in these cases likewise applies to Debtors' proposal to retain this property and pay the arrears through their plan. They assert that the property is necessary to "permit them to live in modest comfort" after their case is over. [ECF No. 94, p. 7 ln. 16–17]. And, they suggest, "holding onto this property ... in an improving market, could be ... a way of helping them make a fresh start." [ECF No. 94, p. 7 ln. 5–6]. Prudent as this course may be, the Code does not allow debtors "to acquire financial security for the future at the expense of [their] unsecured creditors." *In re Merrill*, 255 B.R. at 324. Debtors' attempt to retain their investment would consume virtually all of their projected disposable income and excluded funds that they would otherwise contribute to their plan.

This results in a de minimis return to their creditors. It would be inequitable to allow Debtors to saddle their creditors with the burden of Debtors' financial investment while they obtain the benefits of a bankruptcy discharge. Retaining the Libra property is not a reasonably necessary expense since Debtors operate it at a loss and it is not their primary residence. As such, Debtors may not deduct the proper-

ty's costs from their disposable income. The court **sustains** the Trustee's objection because Debtors have not applied all of their projected disposable income toward the plan.

## III

Debtors' supplemental brief also argues that their Official Form B22 is not the correct measure of projected disposable income based on the Supreme Court's decision in *Hamilton v. Lanning,* 560 U.S. 505, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010). They claim that Debtor Raymundo Gamboa suffered an industrial accident that significantly reduces his income for the foreseeable future, and consequently, the current measure of projected disposable income is inaccurate. Debtors will have to supplement the record with a declaration detailing Mr. Gamboa's future income prospects to adequately address this aspect of the Trustee's objections.

## IV

The court **sustains** the Trustee's objections to confirmation of Debtors' Chapter 13 plan and **denies** his motion to dismiss. Debtors may file a motion for authorization to sell real property to facilitate plan confirmation.

IT IS SO ORDERED.