**In re Vincent George ANDERSON, Jr. and Charolette Kay Anderson, Debtors.**

**Vincent George ANDERSON, Jr., and Charolette Kay Anderson, Appellants,**

v.

**Herb SATTERLEE, Jr., Trustee, Appellee.**

No. 92–35120.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 16, 1993.

Decided April 12, 1994.

Before BROWNING, NORRIS, and O'SCANNLAIN, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Vincent Anderson and Charolette Anderson (the "Andersons"), husband and wife, appeal the district court's affirmance of a bankruptcy court order denying confirmation of their Chapter 13 personal bankruptcy plan. Herb Satterlee, the Trustee, maintains that the bankruptcy court and district court correctly interpreted 11 U.S.C. § 1325(b)(1)(B) to require, as a prerequisite to Chapter 13 confirmation, that a plan provide that the debtor pay all *actual* disposable income to the Chapter 13 trustee during the life of the plan. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(d).

Because 11 U.S.C. § 1325(b)(1)(B) explicitly states that a plan must provide for payment of *projected* disposable income, not *actual* disposable income, we reverse and remand for further proceedings consistent with this opinion.

I

On December 12, 1990, the Andersons filed a Petition for Relief under the provisions of Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301–1330. They proposed a personal bankruptcy plan that obligated them to pay the bankruptcy trustee $800 a month for 36 months, an amount that would not pay creditors in full. Because the Andersons' plan does not pay creditors in full, if the trustee or creditor objected, the bankruptcy court could not confirm the plan unless the Andersons pledged to pay all their projected disposable income to the trustee during the three-year period that defines the normal duration of a Chapter 13 plan. *See* 11 U.S.C. § 1325(b)(1)(B). At a § 341 meeting,[1] the Trustee requested that the Andersons sign a

Peter H. Arkison, Bellingham, WA, for debtors/appellants.

Michael D. Bohannon and Cynthia A. Kuno, Foster Pepper & Shefelman, Seattle, WA, for trustee/appellee.

1. The United States trustee must convene a meeting of creditors before final confirmation of a bankruptcy plan. 11 U.S.C. § 341.

"Best Efforts Certification."[2] The parties agree the Certification, if signed, would constitute an agreement by the Andersons to pay all *actual* disposable income to the trustee. The Trustee would determine the Andersons' actual disposable income by periodic review of their financial status and then automatically adjust their payments. The Andersons refused to sign the Certification.

At the confirmation hearing on January 28, 1991, the Trustee argued to the bankruptcy court that the court could not confirm the Andersons' plan unless they signed the Certification and pledged to pay all actual disposable income to the Trustee for distribution to creditors. The bankruptcy court agreed and, because the Andersons refused to sign the Certification, denied confirmation of their Chapter 13 plan.

On appeal to the district court, the Andersons argued, as they had to the bankruptcy court, that § 1325(b)(1)(B) required only that they pledge payment of all *projected*, not all *actual*, disposable income. The Andersons maintained that since $800 represented an accurate projection of their disposable income over the three years of the plan, their plan was confirmable. The district court was unpersuaded and affirmed the bankruptcy court's order denying confirmation. The Andersons appeal.

## II

The language of the statute is clear. If the holder of an allowed unsecured claim or trustee objects to the confirmation of a Chapter 13 plan and the plan proposes less than full payment of a creditor's claim, the plan may be approved only if "as of the effective date of the plan," it provides for payment of "all of the debtor's *projected disposable income* to be received in the three-year period beginning on the date that the first payment is due under the plan...." 11 U.S.C. § 1325(b)(1)(B) (emphasis added).[3] The Fifth Circuit in *Matter of Killough*, 900 F.2d 61 (5th Cir.1990) (per curiam), described the two-part process for arriving at § 1325(b)(1)(B)'s "projected disposable income" figure. "For practical purposes, this task is usually accomplished by multiplying the debtor's monthly income by 36. Next, the bankruptcy court must assess the amount of the debtor's income that is 'disposable.'"[4] *Id.* at 64 (citing 5 *Collier on Bankruptcy* ¶ 1325.08[4][a] (15th ed. 1985)). The Fifth Circuit's interpretation fully accords with the plain language of the statute, and we adopt it.[5]

The Andersons' plan states that "[t]he Debtors will submit to the Trustee the sum of $800 per month for 36 months." The Trustee does not challenge the accuracy of $800 as a projection of the Andersons' disposable income. *Cf. id.* (explaining that

2. The Certification states in relevant part:
  Comes now the debtor(s) herein and certifies and states the following:
  1. That debtor(s) has filed a petition for relief under Chapter 13;
  2. That the successful completion of debtor(s) Chapter 13 plan may require that payments extend beyond 36 months, but no longer than 60 months pursuant to 11 U.S.C. Section 1322(c); and
  3. That in order to ensure the debtor(s)' best effort and obviate any objection to confirmation by the Trustee and/or the holder of an allowed unsecured claim, all of the debtor(s)' projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan, pursuant to 11 U.S.C. Section 1325(b)(1)(B).

3. Section 1325(b)(1)(B) provides that:
  (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of

the plan, then the court may not approve the plan unless, *as of the effective date of the plan —*
  (B) the plan provides that all of the debtor's *projected disposable income* to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
11 U.S.C. § 1325(b)(1)(B) (emphasis added).

4. "Disposable income" is defined as income not reasonably necessary "for the maintenance or support of the debtor or a dependent of the debtor; and if the debtor is engaged in business, for the payment of expenditures necessary for continuation, preservation, and operation of such business." 11 U.S.C. § 1325(b)(2)(A) & (B).

5. Webster's defines "project" as "1 b: to plan, figure or estimate for the future." *Webster's Ninth New Collegiate Dictionary* 940 (1984).

when a creditor or trustee objects to a plan "the bankruptcy court had to find that her proposal devoted her entire 'projected disposable income' for the three years following her first payment toward her plan"). Instead, the Trustee argues that the $800 projection does not assure that the Andersons will pay all actual disposable income during the life of the plan. This argument has a fatal flaw: § 1325(b)(1)(B) does not require debtors to give such an assurance. Instead, § 1325(b)(1)(B) requires provision for "payment of all projected disposable income" as calculated at the time of confirmation, and we reject the Trustee's attempt to impose a different, more burdensome requirement on the debtors' plan as a prerequisite to confirmation.[6] *See* 11 U.S.C. § 1325(b)(1)(B).

■ Moreover the Trustee's efforts to force the Andersons to agree to a periodic adjustment of their payments without a court order is inconsistent with the procedures established for modifying a debtor's plan. *See* 11 U.S.C. § 1329.[7] Under § 1329, the trustee may request modification of the debtor's plan. 11 U.S.C. § 1329(a). If the debtor or a creditor objects to the modification, the trustee "must bear the burden of showing a substantial change in the debtor's ability to pay since the confirmation hearing and that the prospect of the change had not already been taken into account at the time of confirmation." 5 *Collier on Bankruptcy* ¶ 1329.-01[1][b] (15th ed. 1993); *see also In re Arnold,* 869 F.2d 240, 241 (4th Cir.1989); *Education Assistance Corp. v. Zellner,* 827 F.2d 1222, 1226 (8th Cir.1987); *In re Fitak,* 121 B.R. 224, 228 (S.D. Ohio 1990).

In essence, the Trustee asks us to ignore § 1329 and sanction the use of the Certification requirement as a means of vesting the Trustee with the authority to unilaterally adjust the Andersons' payments without a court order. We reject the Trustee's argument that he may in this fashion extinguish the Andersons' statutory right to ask the bankruptcy court to disapprove a modification of the plan proposed by the Trustee.[8] By providing in § 1329 a mechanism to modify a confirmed plan, Congress plainly did not intend to vest trustees with such unfettered authority.[9] *Cf. United States v. Mehrmanesh,* 689 F.2d 822, 829 (9th Cir.1982) ("We may not construe a statute so to make any part of it mere surplusage").[10]

---

**6.** We find it unnecessary to discuss the relevant legislative history in this case. "The 'plain purpose' of legislation ... is determined in the first instance with reference to the plain language of the statute itself." *Board of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.,* 474 U.S. 361, 373, 106 S.Ct. 681, 688, 88 L.Ed.2d 691 (1986) (citing *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 590–91, 7 L.Ed.2d 492 (1962)); *see also Heppner v. Alyeska Pipeline Serv. Co.,* 665 F.2d 868, 870–71 (9th Cir.1981) (explaining that "evidence of the intent of Congress drawn from the facially clear meaning of the statute will sometimes be so strong that the court will be under no obligation to engage in an exploration of the legislative history"). In any case, the Trustee fails to provide any evidence of legislative intent that calls into question the plain meaning of § 1325(b)(1)(B).

**7.** Section 1329(a) provides that:
(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.
11 U.S.C. § 1329(a).

**8.** Because bankruptcy under chapter 13 is voluntary, the Andersons would always have the option of terminating the plan if they found the Trustee's payment adjustments too burdensome. This option, however, would be unattractive to a debtor who was still in financial trouble but who found the trustee's adjustments unreasonable. Section 1329 protects the debtor from unreasonable plan amendments.

**9.** In so holding, we recognize that a number of bankruptcy courts and district courts have come to the opposite conclusion. *See, e.g., In re Fitak,* 121 B.R. 224, 228 (S.D. Ohio 1990); *In re Krull,* 54 B.R. 375, 378 (Bankr.D.Colo.1985); *Matter of Akin,* 54 B.R. 700, 702 (Bankr.D.Neb.1985).

**10.** We are unpersuaded by the Trustee's argument that the Certification is necessary to fulfill his statutory duty imposed by 29 U.S.C. § 1302(b)(1) to investigate the debtor's financial status. Nothing in our holding alters the Trustee's ongoing duty to investigate the debtor's financial condition.

The judgments of the bankruptcy court and the district court are REVERSED and the case is REMANDED to the bankruptcy court for further proceedings.