POSNER, Circuit Judge.
Joel Turner filed a petition for bankruptcy under Chapter 13 of the Bankruptcy Code. With the petition, he submitted— as he was required to do — a plan that would distribute his entire “projected disposable income” to his unsecured creditors in installments. When he filed his plan he was making monthly mortgage payments of $1,521. The mortgage expense of a Chapter 13 such as Turner, whose family income exceeds the median income of families in his state is deducted from his income to determine his “disposable income.” 11 U.S.C. § 1325(b)(1); id,., § 707(b)(2)(A)(ii)(I); Form B22C (“Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income”, www.uscourts. gov/rules/BK_Forms_08_Official/B_022C_ 0108f.pdf (visited June 3, 2009)); see Schultz v. United States, 529 F.3d 343, 352 (6th Cir.2008); In re banning, 380 B.R. 17, 20-21 (10th Cir. BAP 2007); In re *351 Kagenveama, 541 F.3d 868, 880 n. 3 (9th Cir.2008) (separate opinion). (Another consequence of the fact that Turner’s family income exceeds the median family income in his state is that he has to pay installments for “not less than” five years. 11 U.S.C. § 1325(b)(4)(A)(ii). His plan proposes a five-year payment period.)
Although Turner stated in the plan that he intended to abandon the house to the mortgagee, which would have the same effect as foreclosure in canceling the mortgage, he subtracted the $1,521 monthly mortgage payments from his projected disposable income for the entire period over which he would be paying his unsecured creditors. Yet the mortgage and the debt it secures (for he does not contend that the mortgagee will seek a deficiency judgment against him) will be canceled before Turner is required to make any payments to his unsecured creditors under an approved Chapter 13 plan.
The trustee in bankruptcy, representing the unsecured creditors, objected to the deduction of the monthly mortgage payment (multiplied by 60, the number of months the plan was to remain in effect) from Turner’s disposable income and thus from the amount available to the unsecured creditors. The bankruptcy judge rejected the objection, In re Turner, 384 B.R. 537 (Bankr.S.D.Ind.2008), but because of the importance of the issue certified his order for a direct appeal to this court. He was right to do that. The issue is indeed important. In the wake of the bursting of the housing bubble, which precipitated the current economic downturn, many mortgagors either cannot meet their mortgage obligations, or, because their house is now worth less than the unpaid balance of their mortgage, consider the house a bad investment. In either event they may want to abandon the house to the mortgagee, as in this case, hoping that, spared the expense of a foreclosure proceeding, the mortgagee will not seek (in those states where he is permitted to do so) a deficiency judgment for the difference between the unpaid balance of the mortgage and the market value of the house. But Turner contends that the trustee’s appeal was not perfected and must therefore be dismissed for want of appellate jurisdiction, and we begin our discussion of the appeal with that issue.
Section 1233(b) of the awkwardly named Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23, 202-03, specified temporary procedures, applicable to this case but since superseded, for taking direct appeals from the bankruptcy court to the court of appeals. The appellant was required to file a notice of appeal in the bankruptcy court within 30 days after that court’s decision; either that court or all the parties to the potential appeal had to certify that the ruling sought to be appealed satisfied criteria set forth in 28 U.S.C. § 158(d)(2)(A); see also id., § 158(a); the appellant had to petition the court of appeals, within 10 days of the docketing of the certification, for leave to appeal; and “subject to any other provision of this subsection, [the] appeal ... shall be taken in the manner prescribed in subdivisions (a)(1), (b), (c) and (d) of rule 5 of the Federal Rules of Appellate Procedure.”
The appellant (the trustee) filed his notice of appeal within the specified time (30 days), the bankruptcy court entered its certification order, and on the same day the clerk of that court transmitted to our court both the certification order and the trustee’s request for certification, which he had filed with the bankruptcy court and which that court had granted. Our court docketed the appeal, and after the bankruptcy court transmitted the record of the case to us and the trustee filed a docketing *352 statement we granted leave to appeal. But the trustee had not filed a petition for leave to file an appeal, and we must decide whether his oversight was fatal.
The material that the bankruptcy court transmitted to this court contained everything that the petition for review would have contained, and was filed within the 10-day deadline for filing such a petition. It contained the information concerning the identity of the parties and the order being appealed that the petition would have contained, plus the reasons why this court should grant leave to appeal — for they were the same reasons that the trustee, in the request for certification that he had filed with the bankruptcy court, had presented to that court when it asked that court to certify the case for direct appeal to this court. (For remember that the request was included in the papers transmitted to this court by the bankruptcy court.) Turner, the appellee, did not oppose the trustee’s request for certification; nor does he present any opposition to it in this court.
So the filing in this court was both complete and timely, and the only irregularity besides the lack of the proper label (“petition for review”) was that the “petition” was transmitted to our court by the clerk of the bankruptcy court rather than by the appellant. Notices of appeal, petitions for review, and other pleadings are generally submitted by an agent of the litigant rather than by the litigant himself, unless he is unrepresented. Normally the agent is the litigant’s lawyer. In this case it was the clerk of the bankruptcy court. No purpose behind the statutory requirements for perfecting a direct appeal to the court of appeals in a bankruptcy case was dis-served. Rule 5(b) of the appellate rules specifies the information that a petition for leave to appeal must contain; the transmittal by the bankruptcy court’s clerk to our court contained it. Had the trustee filed a petition for review, it would have been a copy of the certification and of the request for certification; since Turner did not object to the request for certification, there was nothing for the trustee to respond to in a petition for review.
Turner was not fooled by the label. He proceeded exactly as he would have done had the label been correct. He did not think to challenge appellate jurisdiction until his appeal brief, which was filed long after a motions panel of this court had granted leave to appeal. The point is not that Turner waived his right to challenge our jurisdiction but that the trustee’s failure to file a notice of appeal confused no one.
The circumstances that we have described bring the case within the principle that “if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant’s action is the functional equivalent of what the rule requires.” Torres v. Oakland Scavenger Co., 487 U.S. 312, 316-17, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). (We do not take “a litigant files” to confine the principle to cases in which the appellant is proceeding pro se and thus files his pleadings himself rather than through an agent; Torres was represented, and the jurisdictional default resulted from a mistake by his lawyer’s secretary.) It is true that the Court refused to excuse the failure of the notice of appeal to list Torres as an appellant. But it did so because it interpreted Rule 3(c) of the federal appellate rules, in light of an advisory committee note and Rules 4 and 26(b), to make the requirement of naming the appellant jurisdictional. And it pointed out that noncompliance with the requirement “would leave the appellee and the court unable to determine with certi *353 tude whether a losing party not named in the notice of appeal should be bound by an adverse judgment or held liable for costs or sanctions.” 487 U.S. at 318, 108 S.Ct. 2405. Those rules, and that consideration, are not present in this case.
In Smith v. Barry, 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992), the Supreme Court treated an appeal brief as a notice of appeal, and in Casey v. Long Island R.R. Co., 406 F.3d 142, 146 (2d Cir.2005), the Second Circuit treated an appeal brief as the equivalent of a petition for review. We treated a petition for interlocutory appeal as a notice of appeal in Remer v. Burlington Area School District, 205 F.3d 990, 994-95 (7th Cir.2000), because it contained all the information required in such a notice, and more. In Listenbee v. City of Milwaukee, 976 F.2d 348, 350-51 (7th Cir.1992), we treated as the notice of appeal a motion for an extension of time within which to file the notice. Berrey v. Asarco Inc., 439 F.3d 636 (10th Cir.2006), is illustrative of numerous similar cases.
Smith and Remer are particularly germane because in both the documentation that was filed was a good deal more comprehensive than the documentation — a simple notice of appeal — that was required to be filed. Filing too much, like filing too soon, is a good example of “functional equivalence,” because the functional requirement would be satisfied by the lesser included documentation. It is therefore worth emphasizing how much was transmitted by the bankruptcy clerk to this court — not mere portions of a lower-court record but: (1) a notice of appeal; (2) the trustee’s nine-page request for certification of a direct appeal; (3) the certification order; and (4) the short record. The case is unlike Torres, where critical information was missing, and Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., 475 F.3d 1228 (11th Cir.2007), where the only thing filed was a notice of appeal so that again critical information was missing. In this case no information was missing.
We don’t mean to trivialize the requirement of filing a petition for review; in another case the failure to comply might well be fatal. The petition is more than a mere notice, the notice requirement being satisfied by the filing of a notice of appeal. It is a substantive pleading intended to persuade the appellate court to accept an appeal. But there was such a pleading in this case: the request that the bankruptcy court certify the case for an appeal to this court. All the substance — all the information — that a petition for review would have contained was contained in the documents transmitted by the bankruptcy court.
Had Turner challenged the request for certification, it would have behooved the trustee to meet the challenge in a petition for review lodged with this court. But there was, as we said, no challenge, and hence the petition would have said nothing that was not in the request for certification — the request transmitted to us and treated by us as the petition for review, which in every respect except label it was. The point is not that the transmitted documents cover much the same ground that a petition for review must cover; they cover the entire ground.
By the same token, this is not a case in which judicial lenity rewards a lazy litigant. The trustee did everything that he would have done had he filed a petition for review except relabel the request for certification as a petition for review and mail the relabeled document to this court. He should not be penalized because the clerk of the bankruptcy court did the mailing for him.
And we have yet to consider the bearing of the provision of the appeal statute that “subject to any other provision of this sub *354 section, [the] appeal ... shall be taken in the manner prescribed in subdivisions (a)(1), (b), (c) and (d) of rule 5 of the Federal Rules of Appellate Procedure.” Rule 5, as we know, specifies the requirements for a petition seeking leave to appeal, and Rule 2 authorizes the court of appeals, on its own or a party’s motion, to suspend, for any good reason, any of the appellate rules. There is an exception for rules prescribing time limits for filing a petition for leave to appeal, Fed. R.App. P. 26(b)(1), but timeliness is not the issue in this case, and so we are authorized to treat as a petition for review a filing that does not comply with Rule 5. Blausey v. United States Trustee, 552 F.3d 1124, 1130 (9th Cir.2009).
And while Bowles v. Russell, 551 U.S. 205, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007), holds that a statutory deadline for filing a notice of appeal is jurisdictional, the 30-day statutory deadline was met. There is no hint in Bowles that any other requirement for such a notice, or for some equivalent such as the petition for review in this case, is jurisdictional; appeal deadlines are uniquely significant because an appellee is entitled to the security of knowing that once the deadline is passed he is home free. Other requirements for perfecting an appeal, whether imposed by statute or by court rule, are important and should be complied with. But the failure to comply with a rule that is not jurisdictional — and we repeat that requirements for perfecting an appeal that do not involve deadlines are not jurisdictional — is not fatal if no one is harmed by the failure, and in this case there was not the slightest harm, or even minor inconvenience, to anybody.
It is not as if Turner missed a chance to oppose a formal petition for review, as allowed by Fed. R.App. 5(b)(2); he has never complained either that he was surprised when this court set the case for briefing or that he would have contested the petition; for remember that he did not contest an identical pleading in the bankruptcy court — the request for certification. The only irregularity was that the appeal papers were lodged with us by the lower court rather than by the appellant’s lawyer, and we hesitate to call such an irregularity an impropriety; we are not even sure it should be called an error. Nothing in the statutes governing bankruptcy appeals limits the “agents” who may file on behalf of an appellant or bars an appellant from having ratified a gratuitous agency undertaken by the clerk of a bankruptcy court. Rule 32(j)(2) of the federal criminal rules provides an analogy: it authorizes the clerk of the district court to file a notice of appeal on a criminal defendant’s behalf.
We thus find ourselves in agreement with the only previous case involving the kind of bobble involved in this case, Blausey v. United States Trustee, supra — -and anyway it would be pointless to create a circuit split over so transitory, so ephemeral, an issue, and to do so in attempted vindication of a harsh rule that has no basis in any case, or in practical need, or in considerations of justice or efficiency.
So we can proceed at last to the merits. Both parties labor mightily to extract from the language of the Bankruptcy Code guidance to whether an expense that affects the debtor’s obligation to his unsecured creditors and that by the debtor’s own declaration is certain to evaporate before the bankruptcy plan is approved by the bankruptcy judge must nevertheless be treated as if it would persist throughout the entire period during which the plan will be in effect. Chapter 13 does say that the plan, in order to be approved, must provide “that all of the debtor’s projected disposable income to be received in the applicable commitment period beginning *355 on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.” 11 U.S.C. § 1325(b)(1)(B). But it is unclear as a matter of semantics whether “projected” in the statute means “expected,” on the one hand, or mechanically extrapolated from the debtor’s disposable income as calculable from the plan submitted by him, on the other.
Turner ascribes significance to a provision relating the conversion of a Chapter 7 bankruptcy to a Chapter 13 bankruptcy: “the debtor’s average monthly payments on account of secured debts shall be calculated as the sum of the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition.” 11 U.S.C. § 707(b)(2)(A)(iii)(I). Turner infers from this that the amount of the debtor’s payments on account of secured debts, such as a debt secured by a mortgage, must be calculated as of the date of the petition. But that is not what the provision says. It merely specifies that the date of the petition is the date on which the payment period begins.
Turner is left to argue that what he calls the “mechanical” approach to determining projected disposable income is superior to the “forward-looking” approach advocated by the trustee, because it is simpler. But it isn’t simpler. Both approaches are mechanical, at least so far as this case is concerned. One multiplies $1,521 by 60; the other multiplies $0 by 60. All that is at issue is whether the expense to be multiplied must be the one owed on the date the plan was submitted, even though it will not be owed on the date the plan is approved. If the trustee were arguing for some complicated method of estimating ups and downs in Turner’s disposable income over the next five years, we would be presented with a different case. In re Solomon, 67 F.3d 1128, 1130-32 (4th Cir.1995).
For some purposes — for example, determining whether the debtor is eligible for a Chapter 13 bankruptcy — his financial situation on the date of the filing of the declaration of bankruptcy will govern, in order that the right procedural vehicle (for example, whether it should be Chapter 13 or Chapter 7) can be determined at the outset. In re Pearson, 773 F.2d 751, 756-58 (6th Cir.1985); In re Scovis, 249 F.3d 975, 981-82 (9th Cir.2001). This approach is consistent with the principle that jurisdiction is determined by the facts as they exist when a case is filed and is unaffected by a subsequent change in those facts, such as a change of the state of residence by a party to a diversity suit. E.g., Morgan’s Heirs v. Morgan, 2 Wheat. 290, 15 U.S. 290, 297, 4 L.Ed. 242 (1817) (Marshall, C.J.); Chapman v. Currie Motors, Inc., 65 F.3d 78, 80-81 (7th Cir.1995); American Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 139 (1st Cir.2004). But that is not a problem in this case; Turner’s eligibility to proceed under Chapter 13 is not in question.
Since the object of a Chapter 13 bankruptcy is to balance the need of the debtor to cover his living expenses against the interest of the unsecured creditors in recovering as much of what the debtor owes them as possible, we cannot see the merit in throwing out undisputed information, bearing on how much the debtor can afford to pay, that comes to light between the submission and approval of a plan of reorganization. Sometimes as in this case the creditors will benefit from the new information. But in other eases it will be the debtor, In re Solomon, supra, 67 F.3d at 1130-31; In re Kibbe, 361 B.R. 302, 314 (1st Cir. BAP 2007) (per curiam); In re Petro, 395 B.R. 369, 376 (6th Cir. BAP 2008), because the expenses that are de *356 ductible in determining his disposable income are as likely to rise unexpectedly between the dates of submission and approval as to fall (and his income, as in Kibbe and Petro, is as likely to fall as to rise).
The use of the later date, which is consistent with the statutory language though not compelled by it, is more sensible. Cf. Kawitt v. United States, 842 F.2d 951, 953 (7th Cir.1988); City of Stilwell v. Ozarks Rural Electric Cooperative Corp., 166 F.3d 1064, 1072 (10th Cir.1999). We therefore agree with the Eighth Circuit in In re Frederickson, 545 F.3d 652, 659-60 (8th Cir.2008), that while the calculation of “disposable income” in the plan submitted by the debtor “is a starting point for determining the debtor’s ‘projected disposable income,’... the final calculation can take into consideration changes that have occurred in the debtor’s financial circumstances.” To the same effect, see In re Lanning, 545 F.3d 1269, 1278-82 (10th Cir.2008). In re Kagenveama, supra, 541 F.3d at 873-75, is to the contrary. There is disagreement among bankruptcy judges as well. Compare, e.g., In re Petro, supra, 395 B.R. at 376; In re Kibbe, supra, 361 B.R. at 314-15, and In re Hardacre, 338 B.R. 718, 722 (Bankr.N.D.Tex.2006), with, e.g., In re Austin, 372 B.R. 668, 677-78 (Bankr.D.Vt.2007); In re Nance, 371 B.R. 358, 362-65 (Bankr.S.D.Ill.2007), and In re Kolb, 366 B.R. 802, 812-17 (Bankr.S.D.Ohio 2007). But most of them have adopted the position we’re adopting.
Although some judges, like the trustee in our case, call this the “forward-looking” approach, bankruptcy judges must not engage in speculation about the future income or expenses of the Chapter 13 debt- or. That would unsettle and delay the Chapter 13 process as well as exaggerate how accurately a person’s economic situation in five years can be predicted. But in this case there is no speculation; all that is at issue is a fixed debt that we know will disappear before the Chapter 13 plan is approved.
A fixed debt that will disappear: the deduction of mortgage expense from the Chapter 13 debtor’s disposable income is not intended to enrich the debtor at the expense of his unsecured creditors. It is intended to adjust the respective rights of a secured creditor — the mortgagee — and the unsecured creditors. Turner wants to use a phantom deduction to reduce the recovery by his unsecured creditors without benefiting any other creditor.
So the decision of the bankruptcy court must be reversed. But for completeness we note our disagreement with the trustee’s alternative argument that Turner’s plan was submitted in bad faith, and thus in violation of 11 U.S.C. § 1325(a)(3), which requires confirmation only of a plan “proposed in good faith and not by any means forbidden by law.” A plan does not violate this provision merely because it contains, fully disclosed, an arguable claim rejected in the course of the bankruptcy proceeding. In re Belt, 106 B.R. 553, 572 (Bankr.N.D.Ind.1989). It is not bad faith to seek to advance one’s economic interests by making a claim based on a defensible view of one’s legal rights, even if the view ends up being rejected — in this case by an appellate court after the first-line decision maker ruled in favor of the claimant.
But for the reasons stated earlier, the order of the bankruptcy court is
Reversed.