**In re Francisco J. MARTINEZ; Melissa J. Stine; Alex Wathen, Debtors.**

**Rick A. Yarnall, Chapter 13 Trustee, Appellant,**

**Francisco J. Martinez; Melissa J. Stine; Alex Wathen; Haines & Kreiger, LLC, Appellees.**

**BAP Nos. NV–08–1332–MoJuH, NV–08–1335–MoJuH, NV–08–1340–MoJuH. Bk. Nos. 08–14571–BAM, 08–15414–LBR, 08–15133–MKN.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted by Videoconference on May 19, 2009.

Filed Oct. 5, 2009.

Marianne Gatti, Las Vegas, NV, for Rick A. Yarnell.

Before: MONTALI, JURY and HOLLOWELL, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge:

In cases pending before three different bankruptcy courts, above-median income chapter 13 [1] debtors obtained orders valuing and "stripping off" wholly unsecured junior liens against their residences.[2] The

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, as enacted and promulgated after the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 ("BAPCPA").

2. Terms such as "stripping off," "lien strip" or "motion to strip" are actually misnomers

that have become part of everyday bankruptcy parlance. In fact, motions of this type are authorized under Rule 3012, "Valuation of Security" ("The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion. . . ."). See, for example, Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases, United States Bankruptcy Court, Northern District of California, available at:

debtors also proposed chapter 13 plans that deducted the expenses associated with those stripped liens from their "disposable income" devoted to plan payments. The chapter 13 trustee objected to confirmation of the three plans, and the three bankruptcy judges held a consolidated hearing on the objections. The bankruptcy judges overruled the objections and entered orders confirming the plans. The chapter 13 trustee appealed each order. We REVERSE without reaching the trustee's good faith objections.[3] Our conclusion is reinforced by a persuasive and compelling statement from our own court of appeals just a few weeks ago: "Ironic it would be indeed to diminish payments to unsecured creditors in this context on the basis of a fictitious expense not incurred by a debtor." *Ransom v. MBNA Am. Bank (In re Ransom)*, 577 F.3d 1026, 1030 (9th Cir. 2009).

## I. FACTS

In May 2008, appellees Francisco J. Martinez ("Martinez"), Melissa J. Stine ("Stine"), and Alex Wathen ("Wathen") (collectively, "Debtors") filed separate chapter 13 petitions and filed their respective Statements of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B 22C"). They each filed a motion to value collateral, to strip off liens, and to modify rights of the holders of junior liens on their respective residences, alleging in each instance that no equity existed in the property beyond the secured claim of the

holder of the first priority lien. Significantly, in each case, the Debtors alleged that "on the date the instant bankruptcy was filed," no equity existed in the subject properties, and that the affected junior lienholders were "wholly unsecured on the petition date."

In each case, the bankruptcy court entered an order stripping the lien of the junior lienholder, finding that "on the filing date of the instant chapter 13 petition," the claim was "wholly unsecured." The courts therefore ordered that the junior lienholders' "secured claims (sic) is 'stripped off' and shall be treated as a 'general unsecured claim' pursuant to [section] 506(a) . . .", that each junior lienholders' claim "be reclassified as a general unsecured claim," and that the junior lienholders' "secured rights and/or lien-holder rights in the Subject Property are hereby terminated."

Because the Debtors were above-median income debtors, they calculated their "disposable income" for the purposes of plan payments by utilizing the means test formula set forth in section 707(b)(2)(A)(iii), which allows debtors to deduct from their gross monthly income payments "contractually due to secured creditors." *See* 11 U.S.C. §§ 1325(b)(3) and 707(b)(2)(A)(iii). In each case, on the Form B 22C, the Debtors deducted from their gross income the amounts due under the relevant contracts with the respective junior lienholders, even though they were not making these payments postpetition and even though they obtained orders stripping off

---

http://www.canb.uscourts.gov/procedures/dist/guidelines/guidelinesvaluing–and–avoiding–liens–individual–chapter–11–cases–and–cha.

For convenience, we will continue to use the more common terminology throughout this opinion.

**3.** In a separate opinion we are issuing concurrently with this one we reach a similar conclusion regarding attempted deductions

from disposable income for payments not being made because the underlying property has been voluntarily surrendered to the secured creditors, leaving any remaining claim no more than wholly unsecured. *American Express Bank, FSB v. Smith (In re Smith)*, No. WW–08–1311, 2009 WL 3338406 (9th Cir. BAP Oct. 5, 2009).

the relevant liens based upon petition date values.

Consequently, Martinez's Form B 22C reflected a *negative* disposable monthly income of $104.90, even though the disposable income would have been $352.10 a month if the phantom payments to the junior lienholder were excluded from the deductions. Similarly, Stine's Amended Form B 22C reflected a disposable income of $22.50 a month if the payments for the stripped mortgage were deducted. Removing the stripped mortgage payments from the means test calculation leaves Stine's monthly disposable income at $377.50 a month. Wathen's Form B 22C reflected a *negative* disposable income of $390.67, even though his monthly disposable income would have been $209.33 if the payments on the stripped junior lien were not included in the means test calculation.

Appellant Rick A. Yarnall, the chapter 13 trustee ("Trustee"), objected to confirmation in each of the cases, arguing that the Debtors had failed to devote all of their projected disposable income to payment of unsecured creditors as required by section 1325(b) and that their plans were not proposed in good faith. Following extensive briefing by Trustee and the Debtors, the three assigned bankruptcy judges held a consolidated hearing on the Trustee's objections to confirmation of the Debtors' plans.[4]

Applying *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir.2008), the bankruptcy courts each held that an above-median income debtor's disposable income is determined as of the effective date, and that the fixed formula of the means test under section 707(b)(2) (as incorporated by section 1325(b)(3)) permitted the Debtors to deduct payments to the junior lienholders, even though the Debtors intended to (and did) strip the liens of those lienholders and would not (and did not) make any postpetition payments to those lienholders.

On December 5, 2008, the courts in Martinez's and Stine's cases entered orders confirming the chapter 13 plans and orders overruling the Trustee's objections to confirmation. On December 8, 2008, the court in Wathen's case entered an order confirming the chapter 13 plan. Trustee timely appealed.

We did not consolidate the appeals. Instead we authorized a joint brief from appellees but they did not appear in these appeals.[5]

The case was argued before us on May 19, 2009. On August 14, 2009, the Ninth Circuit issued its *Ransom* decision.

## II. ISSUE

In calculating their disposable income to be paid under their plans, may chapter 13 debtors deduct payments to junior lienholders to whom they will not be making payments under their plans because their liens have been stripped (*viz.*, valued at zero)?

## III. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(2)(L) and § 1334. We have jurisdiction under 28 U.S.C. § 158.

## IV. STANDARD OF REVIEW

▮ The issue presented in these appeals is purely one of law and statutory construction; no factual dispute exists.

---

4. Trustee's objection to the chapter 13 plan of a fourth debtor was heard at the same time, but that case is not included in this appeal.

5. Haines & Kreiger, LLC, is the lawfirm that represented Debtors in the bankruptcy courts. Although named in the caption, we do not consider it an appellee.

"We review issues of statutory construction and conclusions of law, including interpretation of provisions of the Bankruptcy Code, de novo." *Mendez v. Salven (In re Mendez)*, 367 B.R. 109, 113 (9th Cir. BAP 2007) (citing *Einstein/Noah Bagel Corp. v. Smith (In re BCE W., L.P.)*, 319 F.3d 1166, 1170 (9th Cir.2003)).

## V. DISCUSSION[6]

### A. *Overview.*

Section 1325(b)(1)(B) provides that if a trustee or unsecured creditor objects to confirmation of a chapter 13 plan, the court may not approve the plan unless, as of its effective date, the plan "provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B).

In *Kagenveama*, the Ninth Circuit held a debtor's "projected disposable income" for the purposes of section 1325(b)(1)(B) is the debtor's "disposable income" as defined in subsection (b)(2) "projected out over the 'applicable commitment period.'" *Kagenveama*, 541 F.3d at 872. The Ninth Circuit specifically rejected the chapter 13 trustee's argument that section 1325(b)(1)(B) requires a forward-looking determination of "projected disposable income."[7] *Id.* at 873–74. The Ninth Circuit also rejected the argument that the "dis-

---

**6.** Our analysis as set forth in *Smith* (see footnote 3), applicable to surrendered collateral, applies with equal force to the facts presented by these three appeals wherein the liens have been stripped. We incorporate that decision by reference and reiterate that analysis in this Part V for completeness of our record here.

**7.** Since *Kagenveama's* issuance, four other courts of appeal have rejected its reasoning and holding. In particular, the Seventh Circuit held in *In re Turner*, 574 F.3d 349 (7th Cir.2009), that a chapter 13 above-median income debtor could not deduct as an expense his mortgage payments on property that he intended to surrender. In reaching its holding, the Seventh Circuit refused to apply a mechanical calculation that considers expenses that exist on the petition date, noting that such a mechanical test is appropriate for determining eligibility to proceed under particular chapters.

> Since the object of a Chapter 13 bankruptcy is to balance the need of the debtor to cover his living expenses against the interest of the unsecured creditors in recovering as much of what the debtor owes them as possible, we cannot see the merit in throwing out undisputed information, bearing on how much the debtor can afford to pay, that comes to light between the submission and approval of a plan of reorganization. Sometimes as in this case the creditors will benefit from the new information.

> But in other cases it will be the debtor .... The use of the later date, which is consistent with the statutory language though not compelled by it, is more sensible.

*Id.* at 355. *See also Nowlin v. Peake (In re Nowlin)*, 576 F.3d 258 (5th Cir.2009) (holding that "projected" disposable income permits consideration of "reasonably certain" future events and stating that the Ninth Circuit emphasized the modified definition of "disposable income" without recognizing the independent significance of the word "projected"); *Hamilton v. Lanning (In re Lanning)*, 545 F.3d 1269 (10th Cir.2008), *petn. for cert. filed*, 77 U.S.L.W. 3449 (Feb. 3, 2009) (Supreme Court has requested briefing by the Solicitor General on the petition (—— U.S. ——, 129 S.Ct. 2820, 174 L.Ed.2d 288)) (holding that starting point for calculating chapter 13 debtor's projected disposable income is presumed to be debtor's current monthly income, subject to showing of substantial change in circumstances); *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652, 659 (8th Cir.2008), *cert. denied*, —— U.S. ——, 129 S.Ct. 1630, 173 L.Ed.2d 997 (2009) (holding that the means test is only a starting point for determining a chapter 13 debtor's disposable income). "[T]he final calculation can take into consideration changes that have occurred in the debtor's financial circumstances as well as the debtor's actual income and expenses as reported on Schedules I and J." *Frederickson*, 545 F.3d at 659.

posable income" calculation of section 1325(b)(2) was a presumptive starting point which could be supplemented by evidence of future or actual "finances of the debtor." *Id.* at 874, overruling *Pak v. eCast Settlement Corp. (In re Pak)*, 378 B.R. 257, 267 (9th Cir. BAP 2007).

Section 1325(b)(2) defines "disposable income" as the debtor's current monthly income less the amounts reasonably necessary to be expended for, *inter alia,* the support of the debtor and his or her dependents. 11 U.S.C. § 1325(b)(2).[8] Section 1325(b)(3), however, restricts the ability of a bankruptcy court to determine the "amounts reasonably necessary to be expended" when the debtor has an above-median income.[9]

For a debtor with above-median income, "amounts reasonably necessary to be expended under paragraph (2) . . . shall be" calculated in accordance with section 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3). Section 707(b)(2) is the chapter 7 "means test" provision, and subsection (b)(2)(A)(iii) provides that the debtor's average monthly payments on account of secured debts shall be calculated as the sum (then divided by 60) of

> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts[.]

11 U.S.C. § 707(b)(2)(A)(iii).

### B. *The Expenses Are Not Necessary for Debtors' Support.*

██ Holding that *Kagenveama* requires application of a backward-looking or static

---

8. Section 1325(b)(2) provides:

(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

(A) (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

(ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4))) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

9. Section 1325(b)(3) provides:

(3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—

(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4.

measurement of an above-median income debtor's expenses in determining projected disposable income, the bankruptcy courts held that Debtors could deduct from their current monthly income mortgage payments which they will not be making. Thus, they held that postpetition events affecting income or expenses (such as surrender of collateral or stripping liens, even based on petition-date values) should not be considered in deciding whether an above-median income debtor has contributed all projected disposable income to a plan under section 1325.

We disagree. Sections 1325(b)(2) and (b)(3), read together, provide that if an expense is not reasonably necessary, it is not included in the calculation of disposable income. If the expense is reasonably necessary for a debtor's and/or dependants' maintenance and support, and the debtor is an above-median income debtor, section 1325(b)(3) requires the court to determine the *amount* in accordance with section 707(b)(2).

A determination of whether an expense is reasonably necessary requires a court to consider what the debtor has to say about the financial realities existing at the time of confirmation of a chapter 13 plan, particularly where the affected lienholder consents by its silence. Here, where Debtors have no intention of paying the mortgage payments either through or outside their plans, and in fact have obtained orders stripping the liens effective as of the relevant petition dates, those mortgage payments cannot be necessary for the support of Debtors or their dependents. They made the decision to strip the liens, not

the bankruptcy courts. Phantom payments cannot be necessary. The fact that courts make the value determinations to support the orders stripping the liens some time after the petition dates is of no consequence. The Debtors alleged, respondent under-secured creditors conceded by their defaults, and the courts found that the petition date values were correct. Had a creditor contended otherwise, the outcome may have been different, but that is not what happened in any of these three cases.

C. *The Dicta of Kagenveama.*

It goes without saying that we must follow binding precedent in our circuit, as the bankruptcy court felt it must. We do not read *Kagenveama* as binding precedent with respect to the calculation of expenses under sections 1325(b)(2) and (b)(3). Consequently, we are bound only by the Supreme Court's directive to follow the plain meaning of the words of a statute unless they lead to an absurd result.[10]

The issue before the Ninth Circuit in *Kagenveama* did not involve either the determination of what are proper expenses (under section 1325(b)(2)) or the measurement of them (under section (b)(3)). Its only meaningful allusion to expenses to be deducted from income is a passing reference to those two subsections, without any analysis:

> The revised "disposable income" test *uses a formula to determine what expenses are reasonably necessary. See 11 U.S.C. § 1325(b)(2)-(3).* This approach represents a deliberate depar-

---

10. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (plain meaning of legislation should be conclusive, except in rare cases in which literal application of statute will produce result demonstrably at odds with intention of its drafters; in such cases, intention of drafters, rather than strict language, controls); *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (when statute's language is plain, sole function of courts, at least where the disposition required by statute's text is not absurd, is to enforce statute according to its terms).

ture from the old "disposable income" calculation, which was bound up with the facts and circumstances of the debtor's financial affairs. *In re Winokur*, 364 B.R. 204, 206 (Bankr.E.D.Va.2007); *In re Farrar–Johnson*, 353 B.R. 224, 231 (Bankr.N.D.Ill.2006) (stating that "[e]liminating flexibility was the point: the obligations of [C]hapter 13 debtors would be subject to clear, defined standards, no longer left to the whim of a judicial proceeding") (internal quotations omitted).

*Kagenveama*, 541 F.3d at 874 (emphasis added).[11]

If those brief statements even rise to the level of dicta, they are still not binding on us because there is absolutely no analysis of whether sections 1325(b)(2) and (b)(3) operate as one, albeit redundantly, or in sequence, with (b)(3) operative only if (b)(2) triggers it. More specifically, there is no analysis or discussion *whether* or *how* the subsections operate to determine deductible expenses.[12] We therefore do not violate the doctrine of *stare decisis* by

applying an interpretation of the statutory scheme that teaches that if an item is not necessary for a debtor's support or maintenance, a debtor cannot engage in the fiction of pretending to pay for it.

It is true that figuring out "projected disposable income" necessarily involves consideration of proper expenses to subtract from "current monthly income". But the court in *Kagenveama* was struggling with the competing views about how to define "projected" with respect to the "income" half of the equation and was not addressing whether the deducted expenses were necessary for the debtor's support.[13]

Thus, while *Kagenveama* directs us to "look backward" to define the income to be projected throughout the applicable commitment period, it did not address the definition of expenses or the measurement of them. Simply put, the opinion does not direct how courts are to calculate the "disposable" portion of "projected disposable income" (income minus expenses × temporal period of three or five years = amount to be paid to unsecured creditors). For

---

**11.** Elsewhere in the opinion, in two footnotes, the subsections are cited:

Disposable income is defined as "current monthly income received by the debtor ... less amounts reasonably necessary to be expended[.]" 11 U.S.C. § 1325(b)(2).... Section 1325(b)(3) requires that if a debtor's annualized current monthly income is greater than the median family income of similarly-sized households, then "amounts reasonably necessary to be expended" are determined in accordance with § 707(b)(2). *Kagenveama*, 541 F.3d at 872 n. 1.

BAPCPA replaced the old definition of what was "reasonably necessary" with a formulaic approach for above-median debtors. 11 U.S.C. § 1325(b)(3). This formula significantly changed the way in which "disposable income" is calculated. *Id.* at 873 n. 2.

**12.** *V.S. ex rel. A.O. v. Los Gatos–Saratoga Joint Union High School Dist.*, 484 F.3d 1230, 1232

n. 1 (9th Cir.2007) ("we are not bound by a holding 'made casually and without analysis, ... uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the panel's full attention ...' "), quoting *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir.2001); *see also Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1082 (9th Cir.2006) (quoting *Johnson*, holding that statements made without a deliberate consideration of the issues presented are not binding and may be re-visited).

**13.** In holding that "projected disposable income" is the same as "disposable income," the Ninth Circuit relied on *Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355, 357 (9th Cir.1994) (pre-BAPCPA case, determining the debtor's "disposable income" and then projecting that sum into the future for the required duration of the plan). This is how the court defined the term "projected" within the phrase "projected disposable income."

this reason the opinion does not bind us to a rule of how to determine the expenses that must be applied to the income side of the equation, nor does it compel us to impose a symmetry that neglects the reality of the case before us, *viz.*, that Debtors decided that they did not need their extra vehicle or their two houses.

We apply the words of the statute even though doing so leaves us with a backward looking definition of projected disposable income (because of *Kagenveama*) and a definition of expenses which (because of the plain wording of the statute) takes into account financial realities (the liens have been stripped as of the petition date) occurring post-petition and incorporated into a debtor's chapter 13 plan.[14]

Without citing *Kagenveama* anywhere in its opinion, the *Ransom* court quoted our Panel's thinking on this very point:

> However, in making that calculation [what debtors can afford to pay their creditors], what is important is the payments that debtors *actually make,* not how many cars they own, because the *payments that debtors make* are what actually affect their ability to make payments to their creditors.

*Ransom,* 577 F.3d at 1029–30 (emphasis added).

### D. *Two–Part Analysis of Subsections (b)(2) and (b)(3).*

■ Under the statute, a debtor may deduct from income those expenses reasonably necessary "for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2)(A)(i).[15] Thus, we read sections 1325(b)(2) and (b)(3) in sequence, as follows: if a debtor says an expense is not reasonably necessary for the debtor's and/or dependants' maintenance and support, the inquiry ends at section 1325(b)(2) as there is no amount to determine in section 707(b)(2) via section 1325(b)(3). Stated otherwise, there is no corresponding amount to subtract from the income component to get to what is "disposable" for the above-median income debtor.

If the expense is reasonably necessary for the debtor's and/or dependants' maintenance and support, then section 1325(b)(3) requires the court to determine the *amount* in accordance with section 707(b)(2).[16] Sections 1325(b)(2) and (b)(3) require a two-step inquiry.

Applied to the facts before us, the Debtors valued their residences such that payments to the stripped lienholders were completely *unnecessary* to their maintenance and support. Thus they had no payments to make. As in *Ransom* in a situation having precisely the same eco-

---

**14.** While this may be labeled a "forward-looking" approach to expenses, it is actually consideration of "a fixed debt that we know will disappear before the Chapter 13 plan is approved." *Turner,* 574 F.3d at 356. As Judge Posner stated on behalf of the Seventh Circuit in *Turner:*

> [B]ankruptcy judges must not engage in speculation about the future income or expenses of the Chapter 13 debtor. That would unsettle and delay the Chapter 13 process as well as exaggerate how accurately a person's economic situation in five years can be predicted. But in this case there is no speculation; all that is at issue is a fixed debt that we know will disappear before the Chapter 13 plan is approved.
> *Id.*

**15.** Subsection 1325(b)(2)(B) adds a deduction from current monthly income for necessary expenses for a debtor engaged in business.

**16.** This is because section 1325(b)(2) begins "For purposes of this subsection, the term 'disposable income' means...." Then subsection (b)(3) begins "Amounts reasonably necessary to be expended under paragraph (2) shall be determined...."

nomic effect (no lien at all there; no secured debt to pay here), the court's words are instructive:

> As did our BAP, we decide this issue not on the IRS's manual, but instead on the statutory language, plainly read, which we believe does not allow a debtor to deduct an "ownership cost" (as distinct from an "operating cost") that the debtor does not have. An "ownership cost" is not an "expense"—either actual or applicable—if it does not exist, period.

577 F.3d at 1030 (citation and internal quotation marks omitted).

The bankruptcy courts believed that *Kagenveama* requires a bankruptcy court to apply a "snapshot" petition-date analysis in calculating both prongs of disposable income: expenses and income. In other words, they felt they could not consider post-petition events in determining whether expenses are reasonably necessary for the maintenance and support of debtors and their dependants. We disagree because, as noted, the clear language of section 1325(b)(2) requires the expenses to be reasonably necessary for the support and maintenance of the debtor. In *Smith* we are holding that items that a debtor has surrendered or intends to surrender are not necessary for his or her support or maintenance. The concepts—surrender and necessity—are mutually exclusive of one another.

So too, here, the notions that a wholly unsecured debt—as of the petition date—must be paid as a secured debt cannot be reconciled. Phantom payments for valueless collateral are not reasonably necessary for a debtor's support and maintenance.

■ Section 1325(b)(2) therefore requires the court to look at the necessity of the expense as determined by the debtor on a real-time, forward-looking basis, while section 1325(b)(3)'s incorporation of section 707(b) requires a static, backward-looking inquiry, since 707(b) itself requires such an analysis. *See, e.g., Morse v. Rudler (In re Rudler),* 576 F.3d 37 (1st Cir.2009). Here, section 1325(b)(3) does not come into play, so we are not bound by a backwards-looking inquiry.

■ This interpretation is consistent with the plain language of the statute. The Ninth Circuit in *Kagenveama* acknowledged that when a statute's language is plain, the court should enforce it according to its terms. *Kagenveama,* 541 F.3d at 872. To the extent that sections 1325(b)(2) and (b)(3) are ambiguous, this interpretation avoids an absurd result and is consistent with the intent of the statute's drafters.

Purely historical expenses which will never be paid under or outside of the plan (phantom expenses) cannot be reasonably necessary for a debtor's support or maintenance. To include them in the calculation of disposable income ignores the different functions of subsections (b)(2) and (b)(3).

In the cases before us, Debtors have chosen to value certain liens at zero and will not be making any payments under or outside their plans on the mortgages. Yet they are deducting these mortgage payments as expenses "necessary" for their support. Debtors cannot have it both ways. Either the expense is necessary or it no longer exists as a secured obligation for the purposes of their plans. Once Debtors opt to eliminate the secured claims, payment of those claims is no longer an expense that is necessary for their support under section 1325(d)(2). Consequently, there is no need to resort to section 1325(b)(3) and its dispatch to the me-

chanical formulas of section 707(b)(2)(A) & (B).[17]

## VI. CONCLUSION

For the foregoing reasons, we RE-VERSE.

HOLLOWELL, J., dissenting,

Under the guise of a plain meaning statutory analysis, the majority holds that § 1325(b)(2) and (b)(3) must be read sequentially, thereby arriving at a "common sense" result which only permits an above median-income debtor to use the means test to calculate expenses *after* the debtor demonstrates the expense is reasonably necessary. While I sympathize with the majority's desire to achieve a common sense result, I cannot agree with its contorted statutory analysis.

Section 1325(b)(3) provides that when a debtor has an above-median income, the reasonably necessary expenses to be deducted from current monthly income ("CMI") *"shall be"* calculated in accordance with § 707(b)(2)(A) and (B), otherwise known as the means test. 11 U.S.C. § 1325(b)(3) (emphasis added). The word "shall" is mandatory. Therefore, for the above median-income debtor, expenses must be calculated under § 707(b)(2). *In re Farrar–Johnson,* 353 B.R. 224 (Bankr. N.D.Ill.2006).

Presumably, Congress believed the inclusion of the means test into the calculation of an above median-income debtor's CMI was the mechanism through which debtors would meet BAPCPA's goals of ensuring debtors repay creditors the maximum they can afford and reducing judicial discretion and non-uniformity. *See* Marianne B. Culhane & Michaela M. White,

*Catching Can–Pay Debtors: Is the Means Test the Only Way,* 13 Am. Bankr.Inst. L.Rev. 665, 677–683 (2005); *Maney v. Kagenveama (In re Kagenveama),* 541 F.3d 868, 875 (9th Cir.2008); *In re Alexander,* 344 B.R. 742, 747–48 (Bankr.E.D.N.C. 2006) (Congress acted intentionally when it inserted the means test into the calculation of chapter 13 payment plans).

The Ninth Circuit, in *Kagenveama,* declined to "override the definition and process for calculating disposable income under § 1325(b)(2)-(3) as being absurd" even if it produced a less favorable result for unsecured creditors. 541 F.3d 868, 875 (9th Cir.2008). In contrast, the Ninth Circuit recently determined, in *Ransom v. MBNA Am. Bank (In re Ransom),* 577 F.3d 1026 (9th Cir.2009) that in order to reach a result consistent with BAPCPA's goal of ensuring that debtors repay creditors as much as possible, § 707(b)(2)(A)(ii)(I) could only be interpreted to "apply" expense standards in cases where debtors in fact pay such expenses.

Of course, as the majority notes, the somewhat inconsistent holdings of *Kagenveama* and *Ransom* are not binding as to the resolution of this case since they did not address the issue presented here on appeal. However, I part with the majority's contention that the *Kagenveama* court's statutory analysis and discussion about how projected disposable income should be calculated was "made casually and without analysis," and can be dismissed as mere dicta. Instead, I believe the statutory analysis undertaken by the Ninth Circuit in *Kagenveama* provides important guidance for the interpretation of § 1325(b)(2) and (b)(3).

---

17. Based on our analysis, we do not need to deal with the merits of an alternate analysis to reach the same result as set forth by the district court in *Thissen v. Johnson,* 406 B.R. 888 (E.D.Cal.2009).

In *Kagenveama,* the Ninth Circuit was confronted, as we are here, with interpreting a subsection of § 1325(b) that contains an imbedded definition in a following subsection. It did not read the sections sequentially. Rather, the court held that the definition of "disposable income" in § 1325(b)(2) gave meaning to the phrase "projected disposable income" in § 1325(b)(1)(B). 541 F.3d at 873. The *Kagenveama* court refused to "de-couple 'disposable income' from the 'projected disposable income' calculation simply to arrive at a more favorable result for unsecured creditors, especially when the plain text and precedent dictate[d] the linkage of the two terms." *Id.* at 875.

I agree with the courts that find the most natural reading of § 1325(b)(3) "commands the application of Section 707(b)(2)(A) and (B) to determine the meaning of the amounts 'reasonably necessary to be expended'" under § 1325(b)(2). *In re Burbank,* 401 B.R. 67, 73 (Bankr. D.R.I.2009) (*citing In re Quigley,* 391 B.R. 294, 299 (Bankr.N.D.W.Va.2008)). Because § 1325(b)(3) contains the definition of "amounts reasonably necessary to be expended," it must be read to give meaning to what is to be deducted by an above median-income debtor in order to determine disposable income. As one bankruptcy court correctly analyzed § 1325(b)(2) and (b)(3):

> As with "disposable income," the term "amounts reasonably necessary to be expended" appears only twice in § 1325; once in § 1325(b)(2) and then in § 1325(b)(3). If the Court were to require an additional requirement that the expense also be necessary for a debtor's "maintenance or support," it would likewise render as surplusage the clear direction in § 1325(b)(3) as to how "amounts reasonably necessary to be expended" *shall* be determined.

*In re Smith,* 401 B.R. 469, 474 (Bankr. W.D.Wash.2008).

Another court noted, " § 1325(b)(3) states that the amounts determined to be reasonably necessary under § 1325(b)(2) *shall* be determined *in accordance with* § 707(b)(2)(A) and (B)—period. The term 'reasonably necessary' in § 1325(b)(3) is not superfluous—it is the very term that this section defines. For that reason, . . . courts may [not] conduct a separate 'reasonably necessary' analysis beyond § 707(b)(2)." *In re Van Bodegom Smith,* 383 B.R. 441, 448 (Bankr.E.D.Wis.2008) (ultimately holding that payments on surrendered collateral are not "scheduled as contractually due" under § 707(b)(2)(A)(iii)(I) and, therefore, cannot be deducted in a debtor's means test calculation).

I do not agree that § 1325(b)(2) and (b)(3) should be read sequentially. The statutory analysis put forth by the majority, which reads § 1325(b)(2) and (3) sequentially, essentially adds language to § 1325(b)(3) to read "*after it is determined the expense is reasonably necessary, then* the amounts reasonably necessary to be expended shall be determined in accordance with § 707(b)(2)."

I cannot join my colleagues in an interpretation that upends the statutory inclusion of the means test in chapter 13, reverting back to the pre-BAPCPA judicial discretion as to what expenses of a debtor are reasonably necessary. *See Kagenveama,* 541 F.3d at 874 (deliberate departure from the pre-BAPCPA disposable income calculation was so that debtors would "be subject to clear, defined standards, no longer left to the whim of a judicial proceeding" (citation omitted)). The majority contends the discretion of the bankruptcy court, under its analysis, is only to hold debtors to the consequences of their decisions about what assets they retain or

surrender; however, the reality of the majority's interpretation of the statute is that bankruptcy courts will have the discretion to make determinations about what expenses are "reasonably necessary."

While I sympathize with the majority's desire for a common-sense solution to the problem created by incorporating the means test into the chapter 13 above median-income debtor's calculation of disposable income, I do not believe it is the role of the judiciary to remedy outcomes that do not comport with our view of common sense. *See Id.* at 875 ("If the changes imposed by BAPCPA arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the statute.").