**In re Kenneth HARRIS, Susan Harris, Debtors.**

No. 09–12534–B–13.

United States Bankruptcy Court, E.D. California, Fresno Division.

Oct. 22, 2009.

case is dismissed or relief ordered."

Susan A. Hemb, Merced, CA, for Debtor.

Michael H. Meyer, Fresno, CA, for Trustee.

## MEMORANDUM DECISION REGARDING MOTION TO CONFIRM FIRST MODIFIED CHAPTER 13 PLAN

W. RICHARD LEE, Bankruptcy Judge.

Before the court is the Debtors' motion to confirm a first modified chapter 13 plan (the "Plan"). The Trustee objects to confirmation (the "Objection") on the grounds that the Plan does not provide for all of the Debtors' projected disposable income to be applied to make payments to unsecured creditors in compliance with 11 U.S.C. § 1325(b)(1)(B).[1] Specifically, the Trustee objects because the Debtors deducted $650 per month on line 40 of their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Official Form 22C, the "Means Test"). The deduction represents money they contribute to the support of their adult daughter (the "Student") while she attends college and lives away from home (the "Student Deduction"). The Trustee contends, based on the language of the underlying statute, subsection 707(b)(2)(A)(ii)(II) (sometimes referred to as the "Statute"), that the Student Deduction is not available because the Student is not "elderly, chronically ill, or disabled." If the Student Deduction is disallowed, then the Debtors' "projected disposable income" would substantially increase. The Debtors disagree with the Trustee's interpretation of the Statute and argue that the Student Deduction may be allowed as the reasonable and necessary support of an "immediate family member." For the reasons set forth below, the court is persuaded that the Trustee's interpretation of subsection 707(b)(2)(A)(ii)(II) is correct in so far as whether some support for the Student is allowable on line 40 of the Means Test.[2] The Objection will be sustained.

This memorandum contains findings of fact and conclusions of law required by

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, Apr. 20, 2005, 119 Stat. 23 (BAPCPA).

2. The Debtors did not count the Student for the purposes of determining their household size, the median family income, and the related expenses allowable in part IV of the Means Test. However, the Debtors contend that the Student is a dependent on their income tax returns and that they would be entitled to take a deduction for her as a member of the Debtors' household for the purpose of computing the monthly expenses under the National and Local Internal Revenue Standards. Those expenses would include food, clothing, housing, utilities, household supplies, personal care, telephone, transportation, and miscellaneous living expenses. The court is not saying here that some deduction for support of the Student may not be allowed elsewhere on the Means Test if she is a legal dependent. However, that issue is not before the court. The Trustee's Objection relates specifically to line 40 of the Means Test.

Federal Rule of Civil Procedure 52 (made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052). The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and §§ 1301, et seq. and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

### Background and Findings of Fact.

The Debtors filed their chapter 13 petition on March 26, 2009. Both Debtors are employed. The Debtors' Means Test calculates their annualized current monthly income ("CMI") to be $118,071, which substantially exceeds the median family income for a family of four in California. Thus, the Debtors are directed to §§ 1325(b)(3) and 707(b)(2) for the rules that determine the "projected disposable income" available to pay their unsecured creditors. The Debtors' Means Test calculates the monthly disposable income to be $190.34. The Plan has a 60–month commitment period and proposes to pay a 3.29% dividend, about $9,950, on unsecured claims that total $302,453. If the Student Deduction is not allowed, the Trustee contends that the Debtors have the ability to pay substantially more to unsecured creditors.

The Debtors list two dependents on schedule I, daughters ages 21 and 16, for a household size of four. The Debtors have a third adult child, the Student, who is a full-time student living at a four-year college in Fresno, California, approximately an hour drive from the Debtors' home. There is no evidence to suggest that the Student is elderly, chronically ill, or disabled. It appears that she has sufficient financial resources such that the only support required from the Debtors is the $650 which they claimed as a deduction on line 40 of the Means Test.

### The Applicable Law.

Bankruptcy Code § 1325(b)(1)(B) states in pertinent part that if the chapter 13 trustee or an unsecured creditor objects to confirmation, then the court may not approve the plan unless, as of the effective date of the plan, either unsecured creditors get paid in full or:

> [T]he plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period ... will be applied to make payments to unsecured creditors under the plan. (Emphasis added.)

For a family with annualized CMI above the applicable median, the term "disposable income" is defined in §§ 1325(b)(2) & (3), which specifically incorporate the deductions allowed in § 707(b)(2):

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor ... less *amounts reasonably necessary* to be expended—
>
> A)(I) for the maintenance or support of the debtor or a dependent of the debtor....
>
> ...
>
> (3) *Amounts reasonably necessary* to be expended under paragraph (2), ... shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than [the applicable median family income]. (Emphasis added.)

In this case, because the Debtors' annualized CMI is greater than the applicable median family income, their "reasonably necessary" deductions for maintenance or support must be determined with reference to § 707(b)(2). The deduction at issue here falls under subsection 707(b)(2)(A)(ii)(II) which provides:

In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an **elderly chronically ill, or disabled** household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses. (Emphasis added.)

### Issue Presented.

In this case, the court is required to interpret the meaning of the Statute, subsection 707(b)(2)(A)(ii)(II). The parties submitted to the court and briefed only the legal question: Is the deduction allowed under the Statute on line 40 of the Means Test limited to support for "elderly, chronically ill or disabled" persons? The Trustee argues that it is so limited. The Debtors contend, based on the construction of the Statute, and the placement of the conjunction "or" before the term "member of the debtor's immediate family," that the Statute defines two separate groups of persons for whom support may be deductible. They argue that the "elderly, chronically ill, or disabled" qualification applies only to members of the Debtors' household, and not to other immediate family members who may live away from the household, such as the Student.[3]

### Analysis and Conclusions of Law.

 The facts in the case are not disputed. This decision turns upon the statutory construction of subsection 707(b)(2)(A)(ii)(II) which allows the Debtors to deduct, from their gross monthly income, the reasonable and necessary cost to support certain defined members of the household and immediate family. Resolution of a dispute over the meaning of a statute begins with the language of the statute itself. Where statutory language is plain, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.... Courts must give meaning to every clause and word of a statute." *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 872 (9th Cir. 2008) (citations omitted).

Numerous courts have wrestled with the "family member," and specifically the "college student" support issues since the enactment of BAPCPA because they call to question the tension between a debtor's perceived moral responsibility to members of the family and legal responsibility to creditors. One bankruptcy court recently considered the issue in a chapter 13 case and found that support for college students was not warranted under the Bankruptcy Code. *In re Goins*, 372 B.R. 824 (Bankr. D.S.C.2007). The *Goins* court looked to subsection 707(b)(2)(A)(ii)(IV), which specifically allows a means test deduction of the reasonable and necessary "actual expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school." The *Goins* court reasoned that by expressly including a deduction for pre-college students under the age of 18, Congress specifically excluded educational expenses for

---

**3.** Based on the same argument, the Debtors also contend that the qualifying term "who is unable to pay for such reasonable and necessary expenses" only applies to the second group of persons in the Statute, immediate family members. Again, the Trustee's objection applies only to application of the "elderly, chronically ill, or disabled" term. The Student's ability to pay for her own support is not before the court.

students over the age of 18 from being "reasonable and necessary";

> Educational expenses for students over the age of eighteen (18) and college expenses generally are no longer within the scope of "reasonable and necessary" expenses contemplated by the Bankruptcy Code. Because Congress expressed that debtor's expenses may include those of children under the age of eighteen (18) to attend elementary or secondary school, expenditures for children over the age of eighteen (18) and those outside the elementary or secondary school context are excluded.

*Id.* at 826–27.

Another court looked at a related issue in a chapter 7 case (support for college-age children and the question of "abuse") based on the "totality of the circumstances" under subsection 707(b)(3)(B). *In re Walker,* 383 B.R. 830 (Bankr.N.D.Ga. 2008). The debtors in *Walker* tried to deduct on their means test substantial costs associated with supporting two adult children in college. Citing numerous other cases, the court noted generally that supporting college-age children is "admirable when parents have the means to do so. However, . . . supporting adult children at the expense of unsecured creditors is not permissible." *Id.* at 838. Finding that the *Walker* case was an abuse of chapter 7, the court commented:

> The Debtors have no legal obligation to support Timothy and Matthew, who are now able-bodied adults. The Debtors propose to shift the use of their income from paying their own obligations to enable their adult children to attend college full time without the burden of working to support themselves. . . . Permitting a discharge in this case would be an abuse, as the Debtors are not needy.

*Id.* at 838–39.

The *Walker* court also rejected the debtors' argument that they could propose a 0% dividend plan in chapter 13 and still pay nothing to their creditors. The court noted that "good faith" is a factor which must be considered in chapter 13:

> [T]hese debtors are eligible to be debtors under chapter 13 should they decide to convert their case. Based on their current budget, they are *capable* of proposing a meaningful dividend to unsecured creditors. They will be entitled and required to propose a plan that deals fairly and in good faith with their secured and unsecured creditors.

*Id.* at 839 (emphasis in original).

The Ninth Circuit Bankruptcy Appellate Panel has recently proclaimed that no deduction should be allowed under § 707(b)(2) unless it first passes the "reasonably necessary" test set forth in subsections 1325(b)(2) & (3). *Yarnall v. Martinez (In re Martinez),* —— B.R. ——, 2009 WL 3338405 (9th Cir. BAP 2009) and *American Express Bank FSB v. Smith (In re Smith),* —— B.R. ——, 2009 WL 3338406 (9th Cir. BAP 2009). (Both hold that subsections 1325(b)(2) and (b)(3) must be read sequentially in a two-part inquiry. Each proposed means test deduction must first be reasonably necessary to a debtor's and/or dependant's maintenance and support. Only then should the court look to § 707(b)(2) and its sub-parts to determine the proper *amount* of the deduction.)

The analysis in *Goins* and *Walker,* coupled with the holdings in *Martinez and Smith,* would support a ruling in favor of the Trustee based solely on the reasonableness and necessity of the Student Deduction and it would be easy to stop there. However, the *Goins* and *Walker* decisions focus on deductions for the support of college-age students generally. Those decisions leave unanswered the specific question raised here. For the purpose of this

Objection, the Trustee does not contend that the Student Deduction is unreasonable or unnecessary. Neither does he contend that the Student is able to support herself. The Debtors and the Trustee have asked this court to address a specific question: What is the proper construction of subsection 707(b)(2)(A)(ii)(II) and does it have any application generally to persons who are not "elderly, chronically ill, or disabled"?

After due consideration for both sides of the argument, the court agrees with the Trustee's interpretation of the Statute. Identical arguments were made by the U.S. Trustee and the debtor in the chapter 7 case *In re Hicks*, 370 B.R. 919 (E.D.Mo. 2007). The Bankruptcy Code allows the same disputed deduction to be taken on line 35 of the chapter 7 means test. Noting that the question was one of first impression, the *Hicks* court analyzed the syntax of the Statute to conclude that the qualifying terms "elderly, chronically ill, or disabled" and "who is unable to pay for such reasonable and necessary expenses" apply to *both* sets of defined persons, i.e., members of the household *and* members of the immediate family:

> The Debtor's reading of Line 35 (and, by extension, the nearly identical language of 707(b)(2)(A)(ii)(II) is unmeritorious. First, both Line 35 and § 707(b)(2) A)(ii)(II) are unambiguous: there is only one indefinite article ("an") preceding the compound adjective phrase in the prepositional phase [sic] "of an elderly, chronically ill, or disabled member of your household [household member] or member of our [the debtor's] immediate family". Had it been intended for "elderly, chronically ill, or disabled" to define only "member of your household [household member]" and for "member of your [the debtor's] immediate family" to be independent from that preceding adjective phrase, there would be a sec-

ond indefinite article ("a") preceding "member of your [the debtor's] immediate family." Moreover, by this same use of one, not two, indefinite articles, the adjective clause "who is unable to pay for such reasonable and necessary expenses" refers to both "member of your household [household member]" and "member of your [the debtor's] immediate family," not only to the latter. Again, had the intent been otherwise, Congress could have employed an additional "a" to convey precisely such limitation: ". . . an elderly, chronically ill, or disabled household member or *a* member of the debtor's immediate family . . . who is unable to pay for such reasonable and necessary expenses." Without this additional indefinite article, the plain reading of the statute directs this Court to interpret the clause "who is unable to pay for such reasonable and necessary expenses" as modifying both "member of your household [household member]" and "member of your [the debtor's] immediate family." As such, the Debtor's interpretation of the statute is unsustainable.

*Id.* at 922 (alteration and emphasis in original).

Based on this interpretation, the *Hicks* court defined the elements of the Statute as follows: "(1) the expenses must be a continuation of actual expenses paid by the debtor; and (2) the expenses must be reasonable and necessary for care and support of an elderly, chronically ill, or disabled: (a) household member who is unable to pay for such expenses; or (b) member of the debtor's immediate family (as defined by the statute) who is unable to pay for such expenses." *Id.* at 922–23.

The following passage from the *Hicks* decision also illustrates why the Trustee's interpretation of subsection

707(b)(2)(A)(ii)(II) is not absurd. The *Hicks* court examined the debtors' interpretation of the Statute in light of the underlying public policy:

> If a debtor is willing to financially support those in a close relationship to him who are elderly, ill, or disabled and cannot support themselves, such debtor will not be imputed with disposable income that actually is spent on providing such support. However, the Debtor's interpretation of the Line 35 and § 707(b)(2)(A)(ii)(II) would allow a debtor to include expenses for an elderly, ill, or disabled "member of the household," regardless of whether that member is able to pay for such expenses. Such an interpretation would allow a debtor to financially support, on the backs of his creditors, a member of the household who is fully capable of self-support.

*Id.* at 922.

Part of the difficulty here lies in the language of the Means Test form itself. Line 40 of Form 22C is worded slightly different than the Statute. Line 40 states:

> **Continued contributions to the care of household or family members.** Enter the total average actual monthly expenses that you will continue to pay for the reasonable and necessary care and support of an elderly, chronically ill, or disabled member of your household or member of your immediate family who is unable to pay for such expenses. (Emphasis in original.)

By transposing the words "household member" into "member of your household" immediately following the word "disabled," and deleting the hanging "and" before the term "who is unable to pay," Form 22C, on its face, would arguably appear to support the Debtors' interpretation. However, the Official Forms used in a bankruptcy case are promulgated by the Judicial Conference of the United States and must be construed to be consistent with the Bankruptcy Code. Fed.R.Bankr.P. 9009. The Official Forms do not have the force of substantive law. When the wording of an Official Form varies from the language of the underlying statute, the statute controls. *In re Rahman,* 400 B.R. 362, 368 n. 10 (Bankr.E.D.N.Y.2009).

### *Conclusion.*

Based on the foregoing, the Trustee's Objection to confirmation will be sustained. The chapter 13 Debtors' contribution to the support of a family member may not be deducted from the Debtors' CMI on line 40 of the Means Test unless that person is both "elderly, chronically ill, or disabled" and "unable to pay for such expenses." The Debtors' Plan does not appear to devote all of the CMI to the payment of unsecured creditors and it cannot be confirmed.